**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Julius Clinton GRAY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 5, 2005.

Filed March 30, 2006.

Vincent J. Quinn, Lancaster, for appellant.

Chad B. Foster, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

BEFORE: TODD, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.:

¶ 1 Julius Clinton Gray appeals from the judgment of sentence imposed upon his convictions for possession with intent to deliver cocaine, possession of a small amount of marijuana, and possession of drug paraphernalia. Gray challenges the lower court's order denying his suppression motion. Upon careful review of the record and relevant law, we reverse the order on the suppression motion, vacate the judgment of sentence, and remand for further proceedings.

¶ 2 On May 8, 2003, at 12:30 p.m., Gray was shopping at an auto parts and service store in Lancaster County when approximately 10 members of the Lancaster

County Drug Task Force entered the store and informed all occupants (including 4 or 5 customers) that they were securing the store pending the arrival of a search warrant for the premises. Earlier that day, police had arrested one of the store's owners, Charles Ross, who indicated during questioning that he had cocaine stored inside a briefcase on the store premises.

¶ 3 Detective Greg Macey approached one of the store's owners, Frank Sanchez, and informed him that Detective Michael Neff was en route with a search warrant. The officers blocked all exits and did not permit anyone to leave the store. Detective Neff arrived fifteen minutes later with a signed search warrant for the premises. Detective Neff read aloud the service portion of the search warrant, and then administered *Miranda*[1] warnings to each individual. He then commenced the search and discovered the briefcase containing cocaine behind the counter.

¶ 4 While the search was being conducted, Detective Macey approached Gray, whom the detective observed as being "a little nervous" and having "a little sweating going on." N.T. Suppression, 3/2/04, at 7. Detective Macey then patted Gray down for weapons, and felt a bulge in his left front pants pocket, which the detective described as feeling like a package of drugs. *Id.* at 9. Detective Macey did not retrieve the item, but summoned Detective Neff and told him, in Gray's presence, that he suspected Gray to be in possession of a controlled substance.

¶ 5 Shortly thereafter, Gray told Detective Macey that he would like to speak with him in the store showroom, away from all the activity. There, Detective Macey asked Gray "if he wanted to give us the bag, what he wanted to do." *Id.* at 11–

12. Gray reached inside his pocket and retrieved a bag containing 41 grams of cocaine. Police subsequently observed a scale, plastic baggies, and cutting agent on the floor of Gray's car in the service area, and seized them.[2] Gray then issued a police statement inside the store after his *Miranda* rights were re-administered.

¶ 6 Prior to trial, Gray filed a motion to suppress the physical evidence and statements to police. The suppression court denied the motion following a hearing on March 2, 2004. Gray waived his right to a jury, and on March 29, 2004, he was tried and convicted of the above offenses. The lower court subsequently sentenced Gray to a mandatory term of three to six years' incarceration for possession with intent to deliver cocaine, and to concurrent terms of probation for the remaining convictions. Following reinstatement of his appellate rights *nunc pro tunc,* Gray filed the instant appeal, challenging the ruling of the suppression court.

¶ 7 Gray argues that: (1) police illegally detained him inside the store with neither probable cause nor reasonable suspicion that he was engaged in criminal activity; (2) he was subjected to an illegal pat-down because at the time of the frisk, Detective Macey did not have a reasonable belief that he was armed and dangerous; and (3) these activities produced tainted fruits that should have been suppressed.

■ ¶ 8 We begin by noting that our review of an order denying a suppression motion requires us to determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. *See Commonwealth v. Reppert,* 814 A.2d 1196,

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Gray was having a stereo installed in the store's garage/service area.

1200 (Pa.Super.2002) (*en banc*).[3] This Court may consider only the evidence of the prosecution and so much of that of the defense that remains uncontradicted when read in the context of the entire record. *Id.*

## I. Detention of Individuals on Commercial Property

■ ¶ 9 Our Supreme Court has made clear that police may not detain a person during a drug raid absent probable cause or a reasonable basis to suspect that the person is involved in the criminal activity on the premises. *See Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992). In the instant case, a team of police officers accompanied by a K–9 entered an auto parts store at mid-day and encountered the two known owners, and several customers. By every indication in the record—*i.e.,* police testimony, Gray's testimony, Gray's car in the service garage, and a signed invoice dated 05/08/03 for the installation of a stereo that Gray produced to police at the scene and the suppression court admitted into evidence— Gray was a legitimate customer at the auto store. The police had no basis, conceptual or actual, to believe that Gray was involved in the targeted criminal activity. He was a customer in an auto store.

¶ 10 In *Rodriquez,* police raided a "drug vending" apartment in York in response to a confidential informant's tip. The informant stated that several individuals were involved, including a Puerto Rican female.

The following evening, police conducted a controlled buy using the informant. After purchasing the drugs, the informant stated that there were six or seven people inside the apartment who were presently planning to leave with the drugs to conduct further sales at a local speakeasy. Acting on the tip that the occupants were on the verge of departure with the drugs, police decided to execute a search of the premises before obtaining a warrant. While securing the building, one of the officers encountered Rodriquez and two other women sitting on the front steps of the building. The officer asked if they lived there and Rodriquez responded affirmatively. The officer then directed the women into the apartment that was being searched. All three women were detained for the duration of the search and *Miranda* rights were given en masse to all individuals detained. Police subsequently discovered narcotics in Rodriquez's purse, which she had left on the building's front steps. Rodriquez was arrested and, following the unsuccessful litigation of her suppression motion, convicted of possession with intent to deliver. This Court affirmed on appeal. *Rodriquez* at 1379.

¶ 11 In striking the detention as unconstitutional, the Supreme Court emphasized that the police lacked a sufficient basis to suspect that Rodriquez was connected in some manner with the targeted criminal activity inside the apartment. *Id.* at 1381.[4] The Court once again emphatically rejected the Commonwealth's invitation to

---

**3.** The lower court did not enter a statement of findings of fact and conclusions of law at the conclusion of the suppression hearing pursuant to Rule 581(I) of the Pennsylvania Rules of Criminal Procedure. However, where a suppression court fails to abide by Rule 581(I), we may look to the trial court's Pennsylvania Rule of Appellate Procedure 1925(a) opinion for its findings of fact and conclusions of law. *See Reppert, supra.* We are satisfied that the lower court's Rule 1925(a) opinion adequately conveys its findings and conclusions.

**4.** The Court parried *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), and *Commonwealth v. Carr,* 334 Pa.Super. 459, 483 A.2d 542 (1984), which authorized police detentions of individuals present on the premises during the execution of valid search warrants. The *Rodriquez* Court noted that, unlike those cases, the po-

expand upon the reasonable suspicion standard—itself an "appropriately narrow" exception to probable cause—on the proposed "need for greater police powers to combat the 'war on drugs.'" *Id.* at 1383. Rather, the Supreme Court re-embraced the heightened protection afforded Pennsylvania citizens, to be free of intrusions upon personal liberty in the absence of, at minimum, an articulable nexus to criminal activity.

¶ 12 We find it significant that *Rodriquez* involved the detention of individuals at a private residence whereas the instant case concerns a blanket detention of all occupants in a store open to the public. Frankly, we are perturbed by the dragnet detention of individuals on commercial premises, particularly the implications pertaining to the impingement of the common, law-abiding citizen's liberty. Indeed, it is not difficult to imagine the scenarios, any 7–Eleven or Wal–Mart will do: if police have good reason to believe that drug-dealing or other criminal activity is occurring on store premises, does that confer them with license to detain all occupants—including citizens who are buying groceries for their children at home, those with medical conditions, et cetera—while police sort through their investigation? We think not.

■ ¶ 13 The commercial nature of the premises *sub judice* cannot be overemphasized. Unlike a private "drug-vending" apartment, where drugs are sold continuously and exclusively, occupants of a store open to the public are entitled to a greater presumption of law-abidingness, or legitimate patronage, given the disproportionately legitimate nature of the premises. The detention of "all occupants" based on their presence in a store suspected of criminal activity is unequivocally forbidden by our Constitution. *See Commonwealth v. Wood,* 833 A.2d 740 (Pa.Super.2003) (*en banc*) (invalidating detention of 17–year-old suspected of underage drinking, despite her youthful appearance, presence in a South Street bar in Philadelphia on Mardi Gras, and statement that she had been drinking earlier that evening but not in that bar; police must possess an "individualized observation of suspicious conduct of the particular person detained"). *See also Commonwealth v. Beasley,* 761 A.2d 621, 625 (Pa.Super.2000) ("[E]ven where the circumstances surrounding an individual's conduct suggest ongoing illegality, the individual may not be detained unless his or her personal conduct substantiates involvement in that activity").[5]

## II. Pat-down Search for Weapons

■ ¶ 14 It is well settled that an officer may pat-down an individual whose

---

lice in *Rodriquez* were not executing a valid search warrant and, "more importantly," had no reason to believe that Rodriquez was engaged in anything but completely legitimate behavior. *Id.* at 1381–1382. Here, similarly, although there was testimony that the search warrant was "in transit," it was undisputed at trial that police were not executing a search of the premises when they detained Gray and, as noted, police had no basis to suspect that Gray was anything but a random customer in an auto store.

5. The Commonwealth argues that *Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989), supports the detention in this case because, "[a]fter a search warrant is approved by a magistrate, the police may secure the residence until the physical arrival of officers with the warrant in-hand" (Brief for Appellant, 4). Though the above statement is correct, the Commonwealth's reliance on *Bruner* is misplaced. *Bruner* pertains to physical structures, not people. There, police secured Bruner's apartment prior to the arrival of a warrant because a known drug-dealer arrived at city hall in the interim and attempted to retrieve Bruner's keys to the apartment. 564 A.2d at 1281. Significantly, nobody was present in the apartment when police secured it, and police *detained no one.* Thus, *Bruner* is wholly inapposite.

suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 661 (1999), *citing Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).[6] To validate a *Terry* frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. *Commonwealth v. Preacher*, 827 A.2d 1235, 1239 (Pa.Super.2003) (citations omitted). In determining whether a *Terry* frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances. *Reppert, supra.*

¶ 15 Here, the evidence established that Gray was, from all perspectives, a customer in the store. He purchased a car stereo there, had it installed on the day in question, and produced a signed and dated invoice corroborating the same. Police expressly regarded him as a customer; they had very little basis to believe that Gray was armed and dangerous. In fact, but for nervousness, police had no basis: the articulated justification for intruding into Gray's privacy was that he seemed to be "a little nervous" and slightly sweating.[7]

¶ 16 Viewing the proposed basis for the frisk of Gray in the totality of the circumstances, we do not believe that the police action was constitutional. It is hardly "suspicious" for an individual to exhibit signs of nervousness when ten armed police officers, accompanied by a K-9, enter a store in which the individual is shopping, yell "police" several times and announce that they have a warrant, secure all exits and state that nobody can leave, and proceed to administer *Miranda* rights to the individual, whom the police expressly regard as a customer. Frankly, we find that it would be extraordinary for any reasonable person *not* to feel somewhat anxious in such unsettling conditions. In short, mere nervousness in such a situation does not amount to a reasonable suspicion that the customer in an under-siege store is armed and dangerous. We find that the pat-down of Gray, which led to the seizure of physical evidence and statements, was not based on articulable, reasonable suspicion.

■ ¶ 17 We reject the Commonwealth's suggestion that Gray subjected himself to a *Terry* frisk by virtue of his presence on the premises during the execution of a search warrant for drugs. That is not the law. Rather, as we specifically held in *In re J.V.*, 762 A.2d 376 (Pa.Super.2000), police executing a search warrant for drugs at a residence may not perform a pat-down for weapons on anyone merely present on the premises.[8] Where the warrant does not authorize the search of the individual,[9] police must be

---

**6.** Because the sole justification for a *Terry* search is the protection of the police and others nearby, such a protective search "must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Commonwealth v. Guillespie*, 745 A.2d 654, 657 (Pa.Super.2000), *quoting Terry*, 392 U.S. at 26, 88 S.Ct. 1868.

**7.** We note that, while nervous behavior is a relevant factor, nervousness alone is not dispositive and must be viewed in the totality of

the circumstances. *See In re M.D.*, 781 A.2d 192 (Pa.Super.2001).

**8.** *A fortiori*, police may not do so in a commercial setting, where citizens are presumably present for completely legitimate reasons.

**9.** The warrant in this case neither authorized a search of Gray nor contained a generally-disfavored "all persons present" clause, which, in any event, still would have required a sufficient nexus between the persons to be

able to cite specific facts establishing a reasonable belief that the individual was armed and dangerous to legitimize a *Terry* frisk. *In re J.V.* at 382.

¶ 18 In summary, police detained Gray based on his presence inside a store, and following this illegal detention, searched him for weapons because he exhibited signs of nervousness in a tumultuous environment. Neither the detention nor the pat-down of Gray was supported by sufficient observations of suspicious behavior. These activities produced tainted fruits, which should have been suppressed. Accordingly, we vacate the judgment of sentence and reverse the order denying the motion to suppress.[10]

¶ 19 Order denying motion to suppress reversed. Judgment of sentence vacated and case remanded for further proceedings. Jurisdiction relinquished.

searched, the location, and the original activity suspected. *See Commonwealth v. Hawkins*, 880 A.2d 678, 680 (Pa.Super.2005).

10. We note that even if we were to find the pat-down of Gray justifiable, we would be troubled by the activity surrounding it. A pat-down is limited to a search for weapons. *See Guillespie*, 745 A.2d at 657–658 ("[T]he purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed") (citations omitted). Here, Macey testified that he conducted the pat-down to discover "any contraband," including weapons, and that the bulge in Gray's pocket felt like a package of drugs. At that point, Detective Macey had no basis to proceed any further. Undeterred, however, he summoned Detective Neff, and in Gray's presence, stated that he suspected Gray to be in possession of narcotics, and subsequently asked Gray to produce the narcotics. Thus, we would be gravely troubled by these actions, if we were to reach them. *See Commonwealth v. Stevenson*, 560 Pa. 345, 744 A.2d 1261, 1265–1266 (2000) (plain feel doctrine is applicable only where officer conducting frisk feels object whose mass or contour makes its criminal character immediately apparent; "the immediately apparent requirement of the plain feel doctrine is not met when an officer conducting a *Terry* frisk merely feels and recognizes by touch an object that could be used to hold either legal or illegal substances, even when the officer has previously seen others use that object to carry or ingest drugs").