J-S44027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT WILLIAM DIXON | |
| Appellant | No. 88 WDA 2014 |

Appeal from the Judgment of Sentence December 9, 2013
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000239-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                **FILED AUGUST 22, 2014**

Robert William Dixon appeals from the judgment of sentence entered in the Court of Common Pleas of Erie County following his conviction by a jury for armed robbery,[1] theft by unlawful taking,[2] receiving stolen property,[3] and possession of the instrument of a crime ("PIC").[4]  After review, we affirm.

The trial court summarized the relevant factual background as follows:

> On October 25, 2012, at approximately 10:15 p.m., [Dixon] and an unknown female lured the victim, Jason Baney, to 818 East

---

[1] 18 Pa.C.S. § 3701(a).

[2] 18 Pa.C.S. § 3921(a).

[3] 18 Pa.C.S. §3925(a).

[4] 18 Pa.C.S. § 907(b).

Avenue in the City of Erie. [Dixon] and/or the female placed a food delivery order from a cell phone with the Fortune Garden Chinese restaurant. When Baney, the delivery driver, arrived at the address given to the restaurant, he discovered the address of 818 East Avenue [did] not exist.

Baney then called the contact cell phone number given to the restaurant. A . . . female answered the phone and waved Baney down as she was standing across the street between 819 and 821 East Avenue. Baney drove his car to the other side of the street where the female was standing. The female asked the victim how much were the delivery charges. She indicated to Baney she needed to get change to pay for the order. She then motioned to [Dixon] who had been pacing behind her in the shadows.

[Dixon] pulled out a black handgun, approached Baney, stuck the gun directly against Baney's stomach and said: "Don't f……move" and "Gimme [sic] your money." (Expletive abbreviated). Baney gave [Dixon] cash ($70 [to] $100) from his left pants' pocket.

[Dixon] directed Baney to give him his cell phone from Baney's vehicle. Baney kept a spare cell phone solely to play music on. Baney kept his activated cell phone in his right pants' pocket. While Baney was retrieving the spare cell phone from his vehicle, [Dixon] kept the gun pointed at Baney through an open car door. Upon taking possession of Baney's cell phone, [Dixon] and the female fled the scene.

Trial Court Opinion, 3/11/14, at 1-2.

Baney reported the incident to the police, and described his assailant as a "black male with a goatee and beard, about 250 pounds, under six feet tall, wearing a puffy stocking cap from which cornrow braids protruded, a dark hoodie and a dark coat." *Id.* at 2. The police were able to trace the mobile phone used to place the food order, and found that it belonged to a Mr. Steele. After locating him, Steele told the police that someone named "Rob" had stolen his mobile phone while on a public bus. Steele also told

the police that he believed Rob had recently been arrested. Dixon had in fact just been arrested for the armed robbery of a pizza delivery driver. Based on the similarity of the crimes, as well as Steele's description of the man who stole his mobile phone, the police suspected Dixon may have robbed Baney. The police constructed a photo array with Dixon's photo in it, along with those of seven other similar looking men. Baney identified Dixon on the photo array as the person who robbed him.

Dixon filed an omnibus pre-trial motion to suppress the photo array, which the trial court denied. On September 17, 2013, a jury convicted Dixon of armed robbery, theft by unlawful taking, receiving stolen property, and PIC. The convictions for theft by unlawful taking and receiving stolen property merged with the armed robbery conviction for purposes of sentencing. Because of his prior felony convictions, Dixon was subject to a mandatory minimum sentence of ten to twenty years in prison for the armed robbery.[5] The trial court sentenced Dixon to the mandatory minimum for armed robbery, and nine to eighteen months' incarceration for PIC. The trial court imposed these sentences consecutively to each other and to the sentence Dixon was serving at the time of trial for convictions in Allegheny County. This appeal followed.

_____

[5] 42 Pa.C.S. § 9714(a).

Dixon raises three issues on appeal. He argues: (1) the photo array used to identify him was too suggestive, such that the police lacked probable cause to arrest him; (2) the verdict was against the weight of the evidence; and (3) the sentence imposed was unreasonably harsh because the trial court set his terms of incarceration to run consecutively. Each of these arguments is without merit.

Dixon first argues that because the photo array was unduly suggestive, its use violated his right to due process, the police lacked probable cause for his arrest, and therefore the trial court erred in denying his motion to suppress. When reviewing a denial of a motion to suppress, our inquiry is "whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. Gray*, 896 A.2d 601, 603 (Pa. Super. 2006). We employ the following standard when determining whether a photo lineup is unduly suggestive:

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

*Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011) (quotation marks and citations omitted).

In *Commonwealth v. Fisher*, 769 A.2d 1116 (Pa. 2001), the appellant argued that the photo array was unduly suggestive because "both witnesses described the suspect as a light-skinned African-American male with freckles and a goatee, while only six of the eight pictures in the line-up showed men with goatees, and only one, the picture of [the] [a]ppellant, showed a man with freckles." *Id.* at 1126. Despite the fact that all of the men in the photographs did not have goatees or freckles, this Court held that the photographs were substantially similar, such that the trial court did not abuse its discretion in admitting them. *Id.* at 1127.

Here, Dixon has pointed out that his photograph was not identical to the others used in the array, but has failed to demonstrate how it was unduly suggestive.[6] The fact that his haircut was not identical to those of the men in the other photographs is insufficient to make the array overly suggestive. *See id.* Dixon further argues that the photo array's reliability was compromised because the photograph of Dixon was taken more than one month after the robbery. Roughly six weeks passed between the crime and the use of the photo array. It is hardly likely that Dixon's face changed

---

[6] We have reviewed the photographic array, and conclude that nothing about it is unduly suggestive such that the trial court abused its discretion in denying Dixon's motion to suppress.

in any appreciable way during that time so as to render the photo array unreliable. Absent something more concrete than Dixon's speculative claims, we find that the record supported the trial court's denial of Dixon's motion to suppress and that there was no legal error. **See Gray**, 896 A.2d at 603.

Next, Dixon challenges the weight of the evidence. Pennsylvania Rule of Civil Procedure 607 mandates, in pertinent part:

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
> (1) orally, on the record, at any time before sentencing;
> (2) by written motion at any time before sentencing; or
> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(a).

A failure to raise a weight of the evidence claim with the trial judge at one of the enumerated junctures constitutes waiver of that claim. **See Commonwealth v. Widmer**, 689 A.2d 211, 212 (Pa. 1997). A careful review of the record reveals that Dixon did not raise his weight of the evidence claim until after he filed his notice of appeal, in his concise statement of matters complained of pursuant to Pa.R.A.P. 1925(b). Accordingly, Dixon has waived this issue.

Finally, Dixon argues that we must vacate his sentence and remand for resentencing because his sentence was extreme and unreasonable, particularly because the trial court imposed consecutive, rather than concurrent terms. Dixon argues that his consecutive sentence was

excessive and unreasonable because it was not "individualized." He also argues that the application of the second strike mandatory minimum was improper, because he did not have sufficient time for rehabilitation between his crimes.

When an appellant challenges the discretionary aspects of a sentence, an appeal is not guaranteed as of right. *Commonwealth v. Moore*, 617 A.2d 8, 11 (Pa. Super. 1992). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b). *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006). We will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole. *Commonwealth v. Tuladziecki*, 522 A.2d 17, 19 (Pa. 1987).

Our standard of review when a defendant challenges the discretionary aspects of his sentence is very narrow; we will reverse only where an appellant has demonstrated a manifest abuse of discretion by the sentencing judge. *Commonwealth v. Hammanson*, 674 A.2d 281, 283 (Pa. Super.

1996). "[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." *Commonwealth v. Dodge*, 77 A.2d 1263, 1270 (Pa. Super. 2013). Further, this Court is not in the business of ensuring offenders are given "volume discounts" for having committed multiple crimes. *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008).

In *Dodge*, this Court held that the appellant raised a substantial question, having characterized his sentence "as a 'virtual life sentence' for non-violent property crimes," and articulated legal authority supporting his position. 77 A.2d at 1271. In contrast, this Court in *Johnson* held that the appellant did not raise a substantial question where he argued consecutive sentences were excessive, and could only elaborate on that assertion by alleging the trial court abused its discretion in failing to consider certain mitigating factors. 961 A.2d at 880.

Dixon's bare assertion that his sentence was not "individualized," without further elaboration, is insufficient to raise a substantial question for our review. *See id.* In fact, a simple reading of the sentencing hearing transcript reveals that the trial court considered Dixon's individual circumstances quite extensively before imposing sentence, and crafted his

sentence accordingly. N.T. Sentencing Hearing, 11/26/13, at 17-21. Dixon's argument that he lacked sufficient time for rehabilitation is equally meritless. When Dixon robbed Baney, he was a fugitive from supervision resulting from his previous convictions. Trial Court Opinion, 3/11/14, at 13. We will not entertain Dixon's argument that he lacked sufficient rehabilitation, when he committed this crime when he was a fugitive from a rehabilitative program. Accordingly, Dixon has raised no substantial question worthy of review.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2014