J-S18004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIE ROGER HILL | |
| Appellant | No. 706 WDA 2017 |

Appeal from the Judgment of Sentence imposed April 12, 2017
In the Court of Common Pleas of Beaver County
Criminal Division at No: CP-04-CR-0000300-2016

BEFORE:  STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                **FILED JULY 12, 2018**

Appellant, Willie Roger Hill, appeals from the judgment of sentence imposed in the Court of Common Pleas of Beaver County on April 12, 2017, following his convictions of firearms not to be carried without a license and possession of a controlled substance, 18 Pa.C.S.A. § 6106(a)(1) and 35 P.S. § 780-113(a)(16), respectively.[1]  Upon review, we affirm.

_____

[1] Appellant also has appealed from a judgment of sentence imposed on February 21, 2017 following his conviction of persons not to possess a firearm. 18 Pa.C.S.A. § 6105(a)(1).  **See** No. 851 WDA 2017.  Both judgments of sentence arose from incidents that occurred on January 21, 2016.  The cases were severed for trial to avoid prejudice to Appellant because the charge of persons not to possess firearms required proof of a prior drug conviction unrelated to the January 21, 2016 incidents.

The underlying facts of this case were summarized by the trial judge, the Honorable Harry E. Knafelc, as follows:

Shortly after 10:00 AM on January 21, 2016, in Ambridge, Pennsylvania, Lt. Brian M. Jameson of the Ambridge Police Department was dispatched to Ambridge Towers, apartment 910, for a disturbance at the behest of the building manager Babette [Robertson]. Upon arrival, Babette reported to Lt. Jameson that "Hondo" Timothy Hollins was in Marc Ellis's apartment and that they were both drunk and screaming. Babette further reported that there was an incident with a female and all of the tenants on the floor were disturbed as a result. Lt. Jameson proceeded to the ninth floor of Ambridge Towers where upon exiting the elevator, he could hear a stereo being played at high volume and two males screaming at each other over the stereo using profane language.

Lt. Jameson knocked on the door and the two males argued with one another over who would open the door. The door was opened by Timothy Hollins who was shouting at Marc Ellis, who in turn was yelling at Mr. Hollins for answering Mr. Ellis' door. Lt. Jameson spoke with Marc Ellis and explained to him that he was called to his apartment at the building manager's request because the loud noise was causing a disturbance.

Mr. Ellis reported to Lt. Jameson that he and Mr. Hollins were drinking and another individual, Anitra Truss, was with them until a man [Appellant] Willie Hill showed up and demanded that Ms. Truss leave with him while holding a gun at his side. Mr. Ellis further reported to Lt. Jameson that he believed Mr. Hill was in Mr. Hollins['] apartment with Ms. Truss.

Following this discussion, Mr. Ellis went back into his apartment and Lt. Jameson showed Mr. Hollins into the elevator and sent him down to the seventh floor where Mr. Hollins's apartment was located so that he could sober up. At this time, Lt. Jameson called for backup. Shortly thereafter, Mr. Hollins returned to the ninth floor via the stairwell and Lt. Jameson then escorted him back to his apartment and advised him he was already being cited for disorderly conduct and would be arrested if he left his apartment again.

At this time, Lt. Jameson stepped into the stairwell and called Sgt. Kleber to respond to Ambridge Towers to assist him. While still in the stairwell, Anitra Truss descended the stairwell, and Lt. Jameson stopped her to ask her what happened earlier with Mr. Ellis and Mr. Hollins. Ms. Truss said she knew nothing and said she was heading to Mr. Hollins['] apartment. Lt. Jameson informed her that he was intoxicated and that she should leave him alone. Ms. Truss then returned up the stairwell.

Lt. Jameson then met up with Babette on the sixth floor where an emergency medical alarm was going off in an empty apartment. They shut the alarm off and then returned to the seventh floor via the stairwell. As they reached the seventh floor, Sgt. Kleber exited the elevator on the seventh floor. As Sgt. Kleber exited the elevator, Willie Hill walked out of Mr. Hollins['] apartment. Lt. Jameson recognized Mr. Hill from previous encounters and directed him to stop and place his hands on the wall. Lt. Jameson then proceeded to perform a **Terry**[2] frisk on Mr. Hill as Mr. Ellis and Mr. Hollins had both reported they personally witnessed Mr. Hill carrying a gun approximately thirty minutes earlier.

While patting Mr. Hill's waistband, Lt. Jameson immediately felt and recognized the handle of a gun on Mr. Hill's right hip that was concealed by Mr. Hill's shirt. Lt. Jameson removed the gun from Mr. Hill's waistband and identified it as a Ruger P89DC 9 mm with 12 rounds loaded in to the magazine and the hammer cocked. At trial, Lt. Jameson testified that he asked Mr. Hill if he had a permit to carry the firearm to which Mr. Hill replied, "what do you think?"

Lt. Jameson then took Mr. Hill into custody and placed him in handcuffs, after which Lt. Jameson conducted a search incident to arrest and discovered an unlabeled pill bottle in Mr. Hill's right pocket with five (5) unopened packets—which appeared to be in the original consumer packaging—labeled Suboxone. Mr. Hill was then transported to the Ambridge Police Station where Officer AJ Bialik gave Mr. Hill a verbal Miranda Warning and subsequently asked if he had a prescription for the Suboxone found on his person. Mr. Hill stated that he did not have a prescription.

---

2 **Terry v. Ohio**, 392 U.S. 1 (1968).

Lt. Jameson then ran a criminal history check on Willie Hill which showed that Mr. Hill had pled guilty to a felony possession with intent to deliver charge on April 30, 2010. Following a check with the Sheriff's Department, it was also ascertained that Mr. Hill had not been issued a firearm permit.

Charges of receiving a stolen firearm, person not to possess a firearm, firearms not to be carried without a license, possession of a controlled substance, terroristic threats, and simple assault were filed by Lt. Jameson on January 21, 2016.

Rule 1925(a) Opinion, 6/15/17, at 1-4 (footnotes and some capitalization omitted).

The trial court also provided a procedural history, **see id**. at 4-5, which we summarize here as follows.

In response to the charges filed against him, Appellant filed a motion to suppress evidence of the Ruger handgun and the Suboxone, asserting those items were the products of an illegal search. Following a suppression hearing on October 4, 2016, the Honorable Dale Fouse denied the motion, finding Lt. Jameson "had the required level of reasonable suspicion to conduct a **Terry** search of [Appellant]." **See** Opinion, Suppression, 10/20/16, at 6.

On January 10, 2017, Appellant filed a motion to sever Count 2 (persons not to possess a firearm) from the remainder of the Information. Judge Fouse granted the motion by order of the same day. Order, 1/10/17, at 1.

Appellant proceeded to a jury trial on the sole count of persons not to possess a firearm on January 11, 2017 before Judge Fouse. The jury returned a verdict of guilty. On February 21, 2017, Judge Fouse sentenced Appellant to a term of imprisonment of not less than five nor more than ten years.

- 4 -

Appellant filed post-sentence motions that were denied by Judge Fouse on May 1, 2017. He filed a timely notice of appeal on May 31, 2017 in the appeal pending at No. 851 WDA 2017.

Meanwhile, on March 15, 2017, Appellant proceeded to a jury trial on the remaining counts with Judge Knafelc presiding. The jury found Appellant guilty of firearms not to be carried without a license and possession of a controlled substance, and returned a verdict of not guilty on the remaining charges. On April 12, 2017, Judge Knafelc sentenced Appellant to a term of not less than one nor more than two years in prison on the firearms charge, to be served concurrently with his sentence for persons not to possess firearms. No further penalty was imposed on the controlled substance conviction.

Appellant's post-sentence motions were denied by Judge Knafelc and Appellant filed a timely notice of appeal on May 11, 2017. Appellant and the trial court complied with Pa.R.A.P. 1925, with Judge Knafelc issuing a Rule 1925(a) Opinion on June 15, 2017.

In this appeal, Appellant asks us to consider the following issues:

I.     Was the evidence insufficient to support the verdict of guilty of Person not to Possess a Firearm because the firearm was not shown to have readily been made operable by means that the [A]ppellant had under his control at the time that he actually possessed the firearm and under the same conditions that exited when he possessed the firearm?

II.    Where the drugs that were found on [Appellant] were packets of a something designated as Suboxone and there

was no evidence as to the time frame or manner that these packets were placed in the pill bottle, did the Commonwealth prove without chemical analysis that the mater [*sic*] in the packets was suboxone?

Appellant's Brief at 8.

Before addressing Appellant's issues, it is apparent that Appellant has mistakenly repeated the first issue from his appeal docketed at No. 851 WDA 2017 as the first issue included in the instant appeal. In Paragraph I of his Summary of the Argument, he does not include any argument relating to firearms but instead suggests the evidence was insufficient to show the substance found on Appellant was a controlled substance (Appellant's Brief at 12, ¶ I). Further, the heading for Argument I reads, "The evidence was insufficient to support the verdict of guilty of possession of a controlled substance because of the lack of proof showing that the substance was a controlled substance." Appellant's Brief at 13 (capitalization omitted). As stated, that contention more closely squares with the second issue set forth above.[3]

_____

[3] We note that the Commonwealth did not question Appellant's apparent misstatement of the issue but instead addressed the sufficiency of evidence supporting Appellant's conviction of carrying a firearm without a license. As the Commonwealth explains, "[I]t was established through [Lt.] Jameson that . . . [Appellant] did not possess a validly issued license to carry a concealed weapon." Commonwealth Brief at 10 (citing Notes of Testimony, 3/15/17, at 98-99). Nowhere in his brief does Appellant contest the sufficiency of evidence relating to a license to carry.

As for his second issue, in the Summary of Argument, Appellant contends the officer did not have sufficient justification to conduct a pat down. Appellant's Brief at 12, ¶ II. The heading for Argument II provides, "The arresting officer was not justified in patting down [Appellant] when the officer had no information regarding the time frame that [Appellant] may have possessed a firearm and when [Appellant] engaged in no suspicious conduct at the time that he was apprehended." *Id.* at 14 (capitalization omitted).

Our appellate rules confine our consideration of issues to ones "stated in the statement of questions involved or [] fairly suggested thereby[.]" Pa.R.A.P. 2116(a). "[O]rdinarily, no point will be considered which is not set forth in the statement of questions involved or suggested thereby." *Thomas v. Elash*, 781 A.2d 170, 177 (Pa. Super. 2001) (citing Pa.R.A.P. 2116(a)). Nevertheless, because the issues addressed in the Argument section of Appellant's brief are consistent with those presented in his Summary of Argument, we shall overlook the obvious error in the phrasing of Appellant's Statement of Questions Involved and entertain the issues as addressed in the Summary of Argument and Argument sections of his brief, challenging the sufficiency of evidence for his conviction for possession of a controlled substance and the denial of his motion to suppress.

We first consider Appellant's challenge to the sufficiency of evidence. In *Commonwealth v. Miklos*, 159 A.3d 962 (Pa. Super. 2017), we reiterated:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict

winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Id.* at 967 (quoting **Commonwealth v. Lynch**, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotations omitted)). Further, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Id.* (citing **Commonwealth v. Markman**, 591 Pa. 249, 916 A.2d 586, 598 (2007)).

To convict a person of possession of a controlled substance under 35 P.S. 780-113(a)(16), the Commonwealth must prove that Appellant knowingly or intentionally possessed a controlled substance. Here, Appellant contends there was no proof that the substance found in his pocket was a controlled substance.

As reflected above in Judge Knafelc's recitation of the facts, Lt. Jameson conducted a search incident to Appellant's arrest and discovered an unlabeled pill bottle in Appellant's right pocket that contained five sealed packets labeled Suboxone, each seemingly in its original consumer packaging. Appellant admitted he did not have a prescription for Suboxone.

As the trial court explained, there is no question that Suboxone is listed as a controlled substance in Pennsylvania and that the packets at issue were found in an unlabeled pill bottle on Appellant's questions. Trial Court Opinion, Second Appeal, 6/15/17, at 10. Still, it is necessary to demonstrate that the items were, in fact, the controlled substance charged and that Appellant was aware of the items' presence. *Id.* Once again, the Commonwealth can sustain its burden by wholly circumstantial evidence. *Miklos*, 159 A.3d at 967 (citation omitted).

The trial court found that a jury could reasonably conclude that Appellant was aware he possessed a pill bottle that contained sealed packets marked as Suboxone. Trial Court Opinion, 6/15/17, at 11. In its jury instructions, the trial court charged that Suboxone is a controlled substance in Pennsylvania but left it up to the jury to decide if the items seized from Appellant contained Suboxone, even absent chemical analysis.

Appellant acknowledges it is not necessary to prove a substance is a "controlled substance" by chemical analysis. Either direct or circumstantial evidence is sufficient. Appellant's Brief at 13 (citing *Commonwealth v. Stasiak*, 451 A.2d 520 (Pa. Super. 1982); *Commonwealth v. Leskovic*, 307 A.2d 357 (Pa. Super. 1973)). He suggests that there is no such evidence here, only "the fact it was taken from [Appellant.]" *Id.* at 14. We cannot agree.

Citing **Commonwealth v. Carpio-Santiago**, 14 A.3d 903, 906-07 (Pa. Super. 2011) and **Leskovic**, 307 A.2d 357, 358059 (Pa. Super. 1973), the trial court recognized that chemical testing of a substance is not required under Pennsylvania law to prove that the substance is in fact a controlled substance. **Id.** at 11. The court acknowledged the source of the packets seized from Appellant is unknown, but that fact is a matter of weight, not sufficiency. **Id.** at 13. The court concluded:

> Given the totality of the circumstances in the case *sub judice*, where the Appellant was found with identical unopened packets labeled Suboxone, which were in the original commercial packaging with dosage information and other identifying markers, and the packets were all bound together and stuffed into an empty and unmarked prescription bottle, this [c]ourt finds that the Commonwealth produced sufficient evidence to meet each of the three elements set out in the jury instruction[4] and find Appellant guilty of [possession of a controlled substance].

**Id.** at 13-14.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and giving the Commonwealth the benefit of reasonable

_____

[4] The court instructed the jury that the Commonwealth was required to prove the following three elements beyond a reasonable doubt:

> First, that the item is in fact a controlled substance[;] Second, that the item was possessed by [Appellant]; and Third, that [Appellant] was aware of the item's presence and that the item in fact was the controlled substance charged.

Trial Court Opinion, 6/15/17, at 10 (citing Pennsylvania Standard Jury Instruction 16.01).

inferences drawn from the evidence, we find the evidence was sufficient to support Appellant's conviction of possession of a controlled substance. Appellant's sufficiency challenge to his possession conviction fails.

In his second issue, Appellant argues Lt. Jameson was not justified in conducting a *Terry* frisk because the officer had no information regarding the timeframe during which Appellant was seen with a gun and because he was not engaged in any suspicious conduct when he was apprehended. From the language in his Summary of Argument and in the Argument section of his brief, it appears he is challenging the denial of the suppression of the firearm, resulting in his conviction of carrying a firearm without a license rather than his conviction of possession of a controlled substance.[5]

In his Rule 1925(a) Opinion, Judge Knafelc indicated the he would not address the suppression issue raised in Appellant's Rule 1925(b) Statement, instead deferring to the Opinion of Judge Fouse filed on October 20, 2016. Rule 1925(a) Opinion, 6/15/17, at 6 n.6.

As Judge Fouse recognized, the Federal and Pennsylvania constitutions offer protections against unreasonable searches and seizures. Trial Court Opinion, Suppression, 10/20/16, at 4 (citing U.S. Const. Amend. IV; Pa. Const. Art I, § 8). Essentially, police must either have a warrant or proceed under one of the exceptions to the warrant requirement. One such exception

---

[5] Nowhere in his second argument does Appellant mention his conviction for possessing a controlled substance.

is a **Terry** stop and frisk that allows an officer to stop an individual and conduct a pat-down search of outer clothing to search for weapons that might be used to harm police or others nearby. **Id.** at 4-5 (citing **Terry, supra**, and **Commonwealth v. E.M.**, 735 A2d 654 (Pa. 1999)). A court must consider the totality of the circumstances to determine whether police had reasonable suspicion. However, absolute certainty is not required but, rather, a level of certainty of a reasonably prudent officer. **Id.** at 5 (citing, *inter alia*, **Commonwealth v. Gray**, 896 A.2d 601, 606 (Pa. Super. 2006)). Further, "a trial court does not err in finding that an officer had reasonable suspicion when relying on statements by a third person to believe that an individual is armed and dangerous." **Id.** (citing **United States v. Murray**, 821 F.3d 386, 393 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 244 (2106)).

Judge Fouse concluded:

Based on a review of the record and applicable case law, we do find that Lieutenant had the required level of reasonable suspicion to believe [Appellant] was armed and dangerous. We begin our analysis by noting that we consider the actions of Lieutenant Jameson objectively and with respect to a totality of the circumstances. The purpose of the initial investigation brought Jameson into a thorny situation with three different potential actors, all of whom were experiencing varying levels of inebriation. The disturbance was ongoing even after he knocked on the door and Mr. Ellis and Mr. Hollins stepped out of the apartment. Mr. Hollins continued to be belligerent, argumentative and even physical with the apartment manager even after he left the apartment. At no time could we say that the situation reached a point of calm allowing proceed [*sic*] to proceed without extreme reticence. In fact, Jameson found the situation to be so potentially troublesome that he called for backup. To this extent, we do find that the initial disturbance was an ongoing matter that continued right up until the **Terry** search was conducted.

- 12 -

Trial Court Opinion, Suppression, 10/20/16, at 5-6.

Based on the evidence of the Commonwealth presented at Appellant's suppression hearing, we conclude Lieutenant Jameson had a reasonable suspicion to search Appellant. Because we find the record supports Judge Fouse's factual findings and its legal conclusions are correct, Appellant's second issue fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2018