J-S18005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIE ROGER HILL | |
| Appellant | No. 851 WDA 2017 |

Appeal from the Judgment of Sentence imposed February 21, 2017
In the Court of Common Pleas of Beaver County
Criminal Division at No: CP-04-CR-0000300-2016

BEFORE:  STABILE, J., MUSMANNO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 24, 2018**

Appellant, Willie Roger Hill, appeals from the judgment of sentence imposed in the Court of Common Pleas of Beaver County on February 21, 2017 following his conviction of persons not to possess a firearm, 18 Pa.C.S.A. § 6105(a)(1).  Appellant was tried on that charge after his motion to suppress the firearm was denied and after other charges stemming from his arrest were severed for trial.[1]  Upon review, we affirm.

_____

[1] Appellant also has appealed from a judgment of sentence imposed on April 12, 2017 following his conviction of firearm not to be carried without a license and possession of a controlled substance.  18 Pa.C.S.A. § 6106(a)(1) and 35 P.S. § 780-113(a)(16).  **See** No. 706 WDA 2017.  Both judgments of sentence arose from incidents that occurred on January 21, 2016.  The cases were severed for trial to avoid prejudice to Appellant because the charge of persons not to possess firearms required proof of a prior drug conviction

In his opinion issued following denial of Appellant's suppression motion, the Honorable Dale Fouse explained:

> By way of criminal information, [Appellant] was charged with receiving stolen property, as a person not to possess a firearm, carrying a firearm without a license, making terroristic threats, simple assault and possession of a controlled substance after police located a firearm in [Appellant's] waistband during a ***Terry***[2] stop and frisk. At the suppression hearing, Lieutenant Brian Jameson of the Ambridge Borough Police Department was the sole witness on behalf of the Commonwealth, and testified to the following:
>
> On January 21, 2016 around 10:30 a.m., Lieutenant Jameson received a call from the Ambridge Police Station from the Ambridge Towers apartment complex housing manager, Babette Robertson, concerning a loud disturbance in apartment 910. Within 10 to 20 minutes, Jameson arrived at apartment 910, belonging to an individual named Marc Ellis. After hearing an argument muffled by loud music, he knocked on the door and announced his presence. Mr. Ellis and another person who lived in the complex, a Timothy Hollins, came out into the hallway to speak with Lieutenant Jameson. At this time, Mr. Ellis informed Jameson that an individual named Willie Roger Hill had come to his apartment brandishing a firearm held at his side in a threatening manner. Mr. Ellis appeared to be fairly drunk and Mr. Hollins appeared to be "extremely intoxicated." Mr. Hollins was arguing and "going after" the building manager, which prompted Jameson to call for backup—Sergeant Kleber—who showed up 10 minutes later. Jameson then escorted a drunk Mr. Hollins from the 9th floor to his apartment on the 7th floor, taking the elevator. While he was taking the stairs to get back to the 9th floor, he ran into an individual named Anitra Truss, who was present for the argument in apartment 910, but stated to Jameson that she "didn't know anything." Jameson then returned to the 9th floor where he took a more complete statement from Mr. Ellis, again confirming that [Appellant] made a threat with a firearm. Shortly

_____

unrelated to the January 21, 2016 incidents. The instant appeal involves only the judgment of sentence imposed for persons not to possess firearms.

2 ***Terry v. Ohio***, 392 U.S. 1 (1968).

after taking the statement from Mr. Ellis, Lieutenant Jameson and the building manager went to the sixth floor to investigate a building alarm that turned out to be a malfunctioning [*sic*] in a vacant room. In returning to the 7th floor using the stairwell, Lieutenant Jameson saw Sergeant Kleber step out of the elevator all while [Appellant], Willie Roger Hill, walked out of Mr. Holmes' apartment. At this time, Jameson approached [Appellant] and asked him to place his hands against the wall and patted his waistband to find a pistol loaded with 12 rounds. Jameson recognized [Appellant] as [a] person convicted of an enumerated offense under 18 Pa.C.S. § 6105(b). Following the pat-down, James arrested [Appellant] and conducted a search incident to arrest which revealed a driver's license as well as a vial of suboxone. During the arrest, Jameson asked [Appellant] whether he had a permit for the firearm, to which [Appellant] rhetorically asked, "what do you think?"

Trial Court Opinion, Suppression, 10/20/16, at 2-3 (references to notes of testimony, footnotes, and some capitalization omitted).

The trial court explained that Appellant sought suppression of the firearm retrieved from his waistband based on his claim that Lieutenant Jameson did not have the required reasonable suspicion to conduct a *Terry* search. Appellant argued that the initial disturbance to which the officer responded was not ongoing at the time of the stop. Following a suppression hearing on October 4, 2016, the trial court denied the motion, finding Lieutenant Jameson "had the required level of reasonable suspicion to conduct a *Terry* search of [Appellant]." *Id.* at 6.

On January 10, 2017, Appellant filed a motion to sever Count 2 (persons not to possess a firearm) from the remainder of the Information. The trial court granted the motion by order of the same day. Order, 1/10/17, at 1.

On January 11, 2017, Appellant proceeded to a jury trial before Judge Fouse on the sole count of persons not to possess a firearm. At the conclusion of trial, the jury returned a verdict of guilty. On February 21, 2017, the court sentenced Appellant to a term of imprisonment of not less than five nor more than ten years. Appellant filed post-sentence motions that were denied on May 1, 2017. He filed a timely notice of appeal on May 31, 2017. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this appeal, Appellant presents two issues for our consideration:

I. Was the evidence insufficient to support the verdict of guilty of Person[s] not to Possess a Firearm because the firearm was not shown to have readily been made operable by means that the [A]ppellant had under his control at the time that he actually possessed the firearm and under the same conditions that exited when he possessed the firearm?

II. Was the arresting officer justified in patting down [Appellant] when the officer had no information regarding the time frame that [Appellant] may have possessed a firearm and when [Appellant] engaged in no suspicious conduct at the time that he was apprehended?

Appellant's Brief at 8.

Appellant's first issue involves a challenge to the sufficiency of evidence to support his conviction of persons not to possess a firearm. In *Commonwealth v. Miklos*, 159 A.3d 962 (Pa. Super. 2017), we reiterated:

[O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof

by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Id.* at 967 (quoting **Commonwealth v. Lynch**, 72 A.3d 706, 707-08 (Pa. Super. 2013) (*en banc*) (internal citations and quotations omitted)). Further, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." **Id.** (citing **Commonwealth v. Markman**, 591 Pa. 249, 916 A.2d 586, 598 (2007)).

"To sustain a conviction for the crime of persons not to possess a firearm, the Commonwealth must prove that '[Appellant] possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm.'" **Id.** (citing **Commonwealth v. Thomas**, 988 A.2d 669, 670 (Pa. Super. 2009)). Because Appellant does not contest that he was convicted of an enumerated offense that prohibits him from possessing a firearm, we shall focus on the whether the Commonwealth proved that he "possessed a firearm."[3]

---

[3] The Commonwealth presented evidence of Appellant's 2010 felony conviction of possession with intent to deliver, an enumerated offense precluding him from legally possessing a firearm. **See** N.T., Trial, 1/11/17, at 164-69.

The term "firearm" is defined as any weapon "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S.A. § 6105(i). In the instant case, the trial court considered Appellant's contention that the Commonwealth failed to prove beyond a reasonable doubt that Appellant "knowingly, intentionally or unlawfully possessed a firearm or that the firearm was designed for the prohibited purpose." Rule 1925(a) Opinion, 7/31/17, at 3 (quoting Appellant's Rule 1925(b) Statement at ¶ 2).[4]

The trial court reviewed the testimony of Lieutenant Jameson, including his statement that he removed the firearm from Appellant's waistband, handed it to Sergeant Kleber, and noticed "the hammer was cocked on it, and it was in a functional state[.]" *Id.* at 4 (quoting Notes of Testimony ("N.T."), Trial, 1/11/17, at 64). Sergeant Kleber proceeded to clear the weapon, de-cocking the hammer, dropping the magazine, and ejecting the shell casing from the chamber. *Id.* In Lieutenant Jameson's experience, "the gun was in a state to be fired." *Id.*

The trial court also considered the testimony of Ambridge Police Chief Mann who testified as to his firearms experience and to test firing the gun

_____

[4] We note that Appellant's brief does not include a copy of Judge Fouse's Rule 1925(a) Opinion but rather includes Judge Knapfelc's Rule 1925(a) Opinion from the appeal docketed at No. 706 WDA 2017. Fortunately, Judge Fouse's Rule 1925(a) Opinion is included in the certified record.

seized by Lieutenant Jameson. Chief Mann testified that he fired five shots from the gun, using ammunition from the station rather than the shells recovered from the gun, and stated that the "gun worked flawlessly, ejected flawlessly, [and] the safety worked." *Id.* at 5 (quoting N.T., Trial, 1/11/17, at 117). Based on Chief Mann's testimony, it is clear that the firearm seized from Appellant was a weapon designed to expel a projectile by the action of an explosive, bringing it within the definition of a firearm under Section 6105(i).

Appellant suggests that his gun was not operable. He contends the Commonwealth failed "to provide evidence that the firearm was operable in the condition and with the bullets found on [Appellant]" and, therefore, his conviction for persons not to possess a firearm cannot stand. Appellant's Brief at 14. However, a gun need not be proven to be operable in order to qualify as a firearm. *See Commonwealth v. Miklos*, 159 A.3d at 967 (quoting *Commonwealth v. Thomas*, 988 A.2d at 672).[5]

_____

[5] Appellant relies on *Commonwealth v. Layton*, 307 A.2d 843 (Pa. 1973), in support of his contention that a gun must be operable. His reliance is misplaced. While *Layton* required proof that a gun was operable, that case was decided under a provision of the Uniform Firearms Act, 18 P.S. § 4628, which has been repealed and replaced by Section 6105. "The current statute applies to any weapon that is designed to fire ammunition containing an explosive charge[.]" *Thomas*, 988 A.2d at 671.

The trial court concluded that the evidence was sufficient to support a conviction that Appellant intentionally, knowingly or recklessly possessed a firearm. Further, it was undisputed that Appellant had been convicted of an enumerated offense prohibiting him from possessing a firearm. Based on our review of the record in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to support Appellant's conviction of persons not to possess a firearm. Appellant's sufficiency challenge fails.

In his second issue, Appellant asserts Lieutenant Jameson was not justified in conducting a pat down of Appellant. He claims Jameson lacked information regarding the timeframe during which Appellant may have possessed a firearm and argues he was not involved in any suspicious activity when he was apprehended by Jameson. Although not stated in these terms, in essence Appellant is raising a challenge to the denial of his motion to suppress the firearm. As a challenge to the denial of a motion to suppress, we apply the following standard of review:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are

erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1256 (Pa. Super. 2017) (quoting

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015)

(alterations in original) (additional citations omitted)).

As the trial court correctly noted, the Federal and Pennsylvania Constitutions offer protections against unreasonable searches and seizures. Trial Court Opinion, Suppression, 10/20/16, at 4 (citing U.S. Const. Amend. IV; Pa. Const. Art I, § 8). Essentially, police must either have a warrant or proceed under one of the exceptions to the warrant requirement. One such exception is a *Terry* stop and frisk that allows an officer to stop an individual and conduct a pat-down search of outer clothing to search for weapons that might be used to harm police or others nearby. *Id.* at 4-5 (citing *Terry, supra*, and *Commonwealth v. E.M.*, 735 A2d 654 (Pa. 1999). A court must consider the totality of the circumstances to determine whether police had reasonable suspicion. However, absolute certainty is not required but, rather, a level of certainty of a reasonably prudent officer. *Id.* at 5 (citing, *inter alia*, *Commonwealth v. Gray*, 896 A.2d 601, 606 (Pa. Super. 2006)). Further, "a trial court does not err in finding that an officer had reasonable suspicion when relying on statements by a third person to believe that an individual is

armed and dangerous." *Id.* (citing *United States v. Murray*, 821 F.3d 386, 393 (3d Cir. 2016), *cert. denied*, 137 S.Ct. 244 (2106)).

The trial court stated:

Based on a review of the record and applicable case law, we do find that Lieutenant had the required level of reasonable suspicion to believe [Appellant] was armed and dangerous. We begin our analysis by noting that we consider the actions of Lieutenant Jameson objectively and with respect to a totality of the circumstances. The purpose of the initial investigation brought Jameson into a thorny situation with three different potential actors, all of whom were experiencing varying levels of inebriation. The disturbance was ongoing even after he knocked on the door and Mr. Ellis and Mr. Hollins stepped out of the apartment. Mr. Hollins continued to be belligerent, argumentative and even physical with the apartment manager even after he left the apartment. At no time could we say that the situation reached a point of calm allowing proceed [*sic*] to proceed without extreme reticence. In fact, Jameson found the situation to be so potentially troublesome that he called for backup. To this extent, we do find that the initial disturbance was an ongoing matter that continued right up until the *Terry* search was conducted.

Trial Court Opinion, Suppression, 10/20/16, at 5-6.

Based on the evidence of the Commonwealth presented at the suppression hearing, we conclude Lieutenant Jameson had reasonable suspicion to search Appellant. Because we find the record supports the court's factual findings and its legal conclusions are correct, Appellant's second issue fails.

Judgment affirmed.

Judgment Entered.

- 10 -

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/2018