J-S03032-17

2017 PA Super 107

COMMONWEALTH OF PENNSYLVANIA,   :    IN THE SUPERIOR COURT OF
                                     :                 PENNSYLVANIA
             Appellee           :
                                       :
          v.                   :
                                       :
DAVID MIKLOS,                    :
                                       :
          Appellant         :      No. 978 WDA 2016

Appeal from the Judgment of Sentence April 20, 2015
in the Court of Common Pleas of Allegheny
Criminal Division at No(s): CP-02-CR-0005022-2014

BEFORE: OLSON, SOLANO, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:               **FILED APRIL 17, 2017**

David Miklos (Appellant) appeals *nunc pro tunc* from the judgment of
sentence entered April 20, 2015, after he was found guilty of persons not to
possess a firearm. We affirm.

The trial court summarized the evidence offered at trial as follows.

> The Commonwealth called Officer Anthony Beatty to
> testify. Officer Beatty has been employed by the City of
> Pittsburgh Police, Zone 1, for over seven years. Zone 1
> encompasses all of the North Side, from the North Shore to
> Brighton Heights. He was working as an officer on the night of
> February 10, 201[4] when he received a call to respond to the
> area of Woodland Avenue at approximately 8:00 pm. Officer
> Beatty responded to the area with his partner Officer Anthony
> Rosato. The nature of the call was for shots fired and a man
> shot. It took them under five minutes to arrive at the scene
> where they observed a white male [later identified as Richard
> Didonato (Victim)] laying [*sic*] on the sidewalk with a gunshot
> wound to his chest area. [] Detective Fallert was also present
> and he started rendering first aid.
>
> The two officers, Beatty and Fallert, conversed with
> [V]ictim and Detective Fallert asked for a dying declaration to

* Retired Senior Judge assigned to the Superior Court

which [V]ictim responded that the male that shot him was named Dave. Officer Beatty was present for this declaration and clearly heard all of it. Officer Beatty stayed with [V]ictim until the medics arrived. As they were loading him onto the stretcher, Officer Beatty observed a clear bag with pills fall from [V]ictim's pocket and thereafter recovered several more bags in the area containing pills. Officer Beatty also recovered $757[.00] from [Victim's] pocket.

The Commonwealth additionally called Detective Scott Evans to testify. Detective Evans is a detective with the Allegheny County District Attorney's office. He has been employed there for approximately four months and prior to that he was a City of Pittsburgh detective and retired after twenty years of service. He was assigned lead investigator of the shooting death involving the [V]ictim. His supervisor called and asked him to process the crime scene. He directly spoke with an individual by the name of Helen Ohrman, nickname Angel. Through Ms. Ohrman, Detective Evans learned that [Appellant], David Miklos, was associated with the [V]ictim. [Appellant] was eventually apprehended in March of 2014; he was arrested by members of the Greater Pittsburgh Fugitive Task Force; he was transported to police headquarters in custody; and he was interviewed by Detective Evans that same day.

During the interview, [Appellant] referred to [V]ictim as Rich and said he ha[d] known [Victim] for about a year. At times, [Appellant] would purchase pills from [Victim] and vice versa. At least initially, the purchase of pills was arranged through [Ms. Ohrman]. Recent to this incident, [Appellant] ran into [Victim] on the North Side and personally got [Victim's] cell phone number and they alone planned the transaction to occur on February 10, 2014. According to what [Appellant] told Detective Evans, on February 10, [V]ictim picked [Appellant] up on Woodland Avenue and he told [V]ictim they had to go to somewhere else to get the pills. [Appellant] then stated [V]ictim became suspicious and pulled out a gun and ordered [Appellant] to get out of the car and walk around to the driver's side. [V]ictim then began to go through [Appellant's] pockets, at which time [Appellant] grabbed for the gun and the two of them were fighting for the gun, when it got twisted behind [V]ictim's back and discharged.

[Appellant] told Detective Evans that he pulled [V]ictim out from underneath the wheels of the car, picked up shell casings, took about [$1,100.00] from [V]ictim and got into [V]ictim's car and drove away. [Appellant] told the detective that he threw the firearm and shell casings over the McKees Rocks Bridge.

Detective Fallert's testimony is entirely consistent with the testimony of Officer Beatty and will not be duplicated herein.

[Appellant] took the stand to testify on his own behalf. [Appellant] admitted knowing the [V]ictim, through drug interactions. The two men were introduced to each other by [Ms. Ohrman]. [Appellant] has known [Ms. Ohrman] for approximately four years and [Victim] for approximately four months. [Appellant] and [V]ictim would buy and sell each other oxycodone. [Appellant] got his pills from [a] valid prescription, as well as from others he knew.

When [Appellant] had transactions with [V]ictim, he would sell the [V]ictim forty to fifty pills, at $20.00 per pill, or $800.00-$1,000.00. [Appellant] would only buy pills from [V]ictim if he ran out or someone else wanted them. According to [Appellant], it was mostly [V]ictim [who] bought pills from him and [Appellant] only bought a few from [V]ictim. [Appellant] admitted he had gotten [V]ictim's cell phone number approximately one month before this incident. And although the normal go between was [Ms. Ohrman], the last few transactions had no middle man.

The night before this incident, [Appellant] told [V]ictim that there would [be] pills available from somebody else the next day and [V]ictim said he would want some. [Appellant] told him to call tomorrow. [Appellant] told [V]ictim to pick him up on Woodland Avenue at 8:00[p.m.]. It was cold and snowy that night as [V]ictim pulled up with the driver's side closest to the curb. [Appellant] got into the front passenger seat and told [V]ictim they had to go down the street to get the pills. [V]ictim became mad because [Appellant] did not have them on him. [Appellant] did not think it was a big deal, but [V]ictim started saying "[t]his is bullshit" and produced a handgun with his left hand. This was the first time [Appellant] had to go somewhere else to get pills for [V]ictim.

After [V]ictim pulled out the gun, he ordered [Appellant] to get out of the car and directed him to come to the other side. When [Appellant] arrived on the other side, [V]ictim was still pointing the gun at him and [Appellant] was very surprised as [V]ictim never had a gun before. [V]ictim was standing by the driver's door when [Appellant] approached him. [V]ictim then reached his left hand into [Appellant's] pocket, as the gun was now in his right hand, and found nothing there. [V]ictim then puts the gun in his other hand and reaches into [Appellant's] other pocket. He found only money, no pills were found.

According to [Appellant], the gun was now back in [V[V]ictimictim's] left hand. [Appellant] grabbed his hand, turned the gun and twisted his arm directly behind him. [Appellant] believed one of [V]ictim's fingers was still on the trigger guard. The gun eventually discharged when it was pointed at [V]ictim's back. [V]ictim fell, the gun fell and his feet and legs slid under the vehicle. [Appellant] stepped towards the open driver's door, he looked down and saw the gun right next to [V]ictim and he grabbed the gun. [Appellant] grabbed [V]ictim's jacket and pulled him up to the curb, but [V]ictim had ahold of [Appellant]'s jacket and when [Appellant] leaned back, it lifted [V]ictim to a sitting position. [V]ictim started grabbing at [Appellant] when [Appellant] fired a second shot into the front of [V]ictim's body. [Appellant] next grabbed money and shell casings he found on the ground and threw the gun on the floor of the driver's side of the vehicle. [Appellant] took [V]ictim's car and drove to McClure Avenue and pulled into a parking lot next to a bar. There is a hillside next to the parking lot and [Appellant] tossed the gun, shell casings and car keys over into the woods, but kept the money.

Trial Court Opinion, 9/26/2016, at 3-9 (citations omitted).

Appellant was found guilty of the aforementioned crime following a non-jury trial on April 20, 2015.[1] That same day, Appellant was sentenced to five to ten years' incarceration. Appellant timely filed a motion for reconsideration, which the trial court denied. No direct appeal was filed and

---

[1] Appellant was found not guilty of criminal homicide and robbery.

on October 7, 2015, Appellant filed *pro se* a Post-Conviction Relief Act (PCRA) petition. Counsel was appointed, and on February 3, 2016, Appellant filed an amended petition seeking to reinstate his post-sentencing and appellate rights *nunc pro tunc*. The trial court granted Appellant's petition, and on March 10, 2016, Appellant's post-sentence motions were filed. By order dated June 27, 2016, those motions were denied. This timely filed appeal followed.[2]

On appeal, Appellant raises claims challenging the weight and sufficiency of the evidence to sustain his conviction, as well as the discretionary aspects of his sentence. Appellant's Brief at 6.

In reviewing Appellant's sufficiency claim, we are mindful of the following.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Lynch***, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotations omitted). The Commonwealth may sustain

---

[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. ***Commonwealth v. Markman***, 916 A.2d 586, 598 (Pa. 2007).

To sustain a conviction for the crime of persons not to possess a firearm, the Commonwealth must prove that "[Appellant] possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm." ***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa. Super. 2009).

Appellant claims the evidence was insufficient to sustain his conviction because his possession of the firearm was in self-defense, negating the intent requirement necessary to convict Appellant of unlawful possession of a firearm. Appellant's Brief at 10-11. "Appellant argues that as required under statute, the harm he sought to avoid was greater than the harm sought to be prevented by the law [.]"[3] ***Id.*** at 11. Here, Appellant contends "his brief possession of the firearm simply to remove it from [Victim's] control was justified." ***Id.***

The trial court responded to Appellant's issue as follows.

> [Appellant] argues that he did not have the intent to possess the firearm and, as such, his conviction cannot be upheld. [Appellant] is correct pursuant to 18 Pa.C.S.[] § 302, the Commonwealth bears the burden of proving he acted intentionally. The standard jury instruction applicable to Section

---

[3] "Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if: (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" 18 Pa.C.S. § 503.

6105 requires the Commonwealth prove beyond a reasonable doubt [Appellant] intended to possess the firearm. The [trial] court agrees [Appellant] did not have specific intent to possess the firearm at the time he struggled with [V]ictim to control the firearm. His intent was to prevent [V]ictim from shooting [Appellant]. In essence, [Appellant] raised a justification defense pursuant to 18 Pa.C.S.[] §§ 302 and 303. In other words, whatever possession occurred while [Appellant] was attempting to prevent [himself] from being shot, was justified. This would include even the possession when the firearm discharged in the initial struggle, which fired the fatal shot killing [V]ictim. However, any possession of the firearm after this point by [Appellant] was not justified.

After [V]ictim was initially shot, the gun fell to the ground. At this point, [Appellant] grabbed the gun from the ground. [Appellant] ultimately fired a second shot into [V]ictim. [Appellant] threw the gun on the floor of the driver's side of the vehicle. After going to a bar, [Appellant] tossed the gun, shell casings and car keys into the woods. The possession [Appellant] was convicted of was this series of possessions from the point he recovered the gun from the ground, fired a second shot, placed the gun in the car and eventually discarded the gun into the woods. The Commonwealth proved beyond a reasonable doubt [Appellant] intended to possess the firearm during this series of acts by [Appellant].

In this case, the parties stipulated to the fact that the [Appellant] had a prior conviction for an enumerated crime under 18 Pa.C.S. § 6105(b). In the case at hand, the Commonwealth overwhelming[ly] proved [Appellant] possessed a firearm and had a prior conviction of an enumerated offense under 18 Pa.C.S. § 6105(b). Nothing further was required of the Commonwealth. Therefore, this court properly concluded that the evidence was sufficient to sustain the conviction of person not to possess a firearm.

Trial Court Opinion, 9/26/2016, at 10-12 (citations omitted).

We agree with the trial court's conclusions. First, we begin by noting that unlawful possession of a firearm is a continuing offense, and thus, Appellant's possession of the firearm may have been justified for part, but

not all of the time Appellant exhibited control over the weapon. *See Commonwealth v. Gross*, 101 A.3d 28, 35 n. 5 (Pa. 2014) ("Possession is ongoing conduct, not a temporally limited act. As long as one is in unlawful possession of a firearm, one is committing an offense."). Second, while Appellant's argument supports his defense for possession of the gun during the struggle with Victim, Appellant fails to convince us, and cites no case law to support his argument that his continued possession of the firearm after Victim was shot was justified.

This Court is cognizant of the dearth of case law in this Commonwealth regarding this particular matter and therefore, it appears to be an issue of first impression. Nonetheless, we are guided by the decisions of our sister states which have encountered this very issue. *Compare Marrero v. State*, 516 So.2d 1052 (Fla. Dist. Ct. App. 3d 1987) (holding that defense of justification available to persons not to possess charge where the defendant claims he grabbed the gun from his assailant during an attack); *Harmon v. State*, 849 N.E.2d 726 (Ind. Ct. App. 2006) (concluding defense of self-defense available where the defendant came into possession of gun during an altercation) *with United States v. Moore*, 733 F.3d 171 (6th Cir. 2013) (holding that Moore's driving away with the gun he claims he came into possession of only after an altercation in which another individual threated to shoot him, closed "the door on his necessity defense.").

Based on the foregoing, we discern no error in the trial court's conclusion that while Appellant's initial possession of the gun was justified, his continued control over the weapon after the altercation was not. Accordingly, we hold the evidence was sufficient to sustain Appellant's conviction.

Next, we begin our review of Appellant's second claim by setting forth our standard of review.

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. … Our review on appeal is limited to determining whether the trial court abused its discretion in denying the motion for a new trial on this ground.

*Commonwealth v. Chamberlain,* 30 A.3d 381, 396 (Pa. 2011) (citations omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." *Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (quoting *Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011)).

Although the trial court did not directly address Appellant's weight of the evidence argument, for the reasons set forth *supra*, the trial court ultimately determined Appellant's issues were without merit. We discern no

abuse of discretion in the trial court's conclusion. Because this was a non-jury trial, the verdict clearly did not shock the trial court's sense of justice. No relief is due.

Appellant's final issue challenges the discretionary aspects of his sentence.

> It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal. Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

Instantly, Appellant timely filed a post-sentence motion in which he requested a modification of his sentence, as well as a notice of appeal. Additionally, Appellant included a 2119(f) statement in his brief, and raised the following issues: (1) "the trial court's sentence was too harsh relative to the underlying criminal conduct[,] and" (2) "[the trial court] neglected to take adequate consideration of his rehabilitative needs." Appellant's Brief at 15.

Initially, we find Appellant's issue that the trial court imposed an excessively harsh sentence relative to the criminal conduct in this case is waived for failure to preserve this argument at sentencing or in his post-sentence motion. **See Commonwealth v. Tejada**, 107 A.3d 788, 799 (Pa. Super. 2015) (holding discretionary aspects claims not raised at sentencing or in a post-sentence motion are not subject to our review, even if raised in 1925(b) statement and addressed in the trial court's 1925(a) opinion).

Consequently, we now consider Appellant's sole remaining argument. Upon review, we find Appellant's issue that the trial court "neglected to take adequate consideration of his rehabilitative needs[,]" Appellant's brief at 15, does not raise a substantial question for our review. **Disalvo**, 70 A.3d 900 at 903 ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.") (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)); **Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014) ("[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question.").

Accordingly, after a thorough review of the record and briefs, we find Appellant has presented no issue on appeal which would convince us to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2017