J-S22001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
       :           PENNSYLVANIA
       :
    v.       :
       :
       :
CALVIN LABRON JONES, JR.     :
       :
    Appellant     :   No. 1189 MDA 2019

Appeal from the Judgment of Sentence Entered June 17, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000451-2018

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED MAY 22, 2020**

Appellant, Calvin Labron Jones, Jr., appeals from the June 17, 2019 judgment of sentence ordering him to serve 50 to 100 months' imprisonment and to pay a $500 fine and costs after a jury convicted Appellant of persons not to possess firearms.[1]  We affirm.

The trial court summarized the factual history as follows:

On the evening of December 8, 2017, Officer Chad McGowan of the Harrisburg Bureau of Police was working as a [s]treet [c]rimes [u]nit [o]fficer with Probation Officer Dan Kinsinger.  They came across an individual by the name of Curtis Hall [("Curtis")] in the 1300 block of Swatara Street, a high crime/drug area of Harrisburg[, Pennsylvania].  Officer McGowan testified that the initial reason why they stopped in that area was because his partner recognized Curtis[, who] was standing next to a silver

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

minivan. Officer Kinsinger initiated contact with Curtis, who was with his brother Donell Hall [("Donell")] at the time.

Officer McGowan exited his vehicle to assist Officer Kinsinger. As he walked over to the minivan, he observed a male, later identified as [Appellant], sitting in the driver's seat. As Officer McGowan approached, [Appellant] got out of the vehicle and started to walk towards him. According to Officer McGowan, while Curtis and Donell did not appear to be at all affected by the police presence, [Appellant] appeared very nervous, talkative, excited, and looked as though he was trying to distance himself from the [minivan]. [Appellant] asked to talk to [Officer McGowan] in private, away from [Curtis and Donell], and told him that he was actually working undercover for the [Pennsylvania] State Police, and had previously done work for former Chief Deputy District Attorney Johnny Baer. [Appellant] told Officer McGowan that the officers' presence was [interfering with] the undercover operation. It appeared to Officer McGowan that [Appellant] was [attempting to use] various [distraction techniques to avoid inquiry by the officer].

Through the [minivan's] lowered window, Officer McGowan saw an open, partially consumed bottle of brandy on the front passenger seat. He asked for and [received Appellant's identification card] and asked if [Appellant] had anything illegal on his person. [Appellant] said he did not, and then consented to a search of his person. The only thing found by Officer McGowan was a folded stack of lottery tickets. Officer McGowan then asked for permission to search the minivan. [Appellant] said yes, but then told the officer that it was his girlfriend Khailah Layton's vehicle, and he would feel better if they called her first to get her consent. When asked if there were any drugs or firearms inside the [minivan], [Appellant] told Officer McGowan that he believed his girlfriend left a [gun] in the [minivan]. Officer McGowan asked exactly where [the] gun was located, and [Appellant] told him Ms. Layton left the gun inside her purse on the second[-]row bench seat. They made contact with Ms. Layton and received her consent to search the vehicle. During the search of the [minivan], Officer McGowan found the [gun] directly underneath the second[-]row bench seat, within arm's reach of the driver's seat. There was no purse, only the gun. It was a nine-millimeter semi-automatic Smith and Wesson pistol and was fully-loaded, with a round in the chamber. The firearm was registered to Ms. Layton. [Appellant's] explanation for the gun being in the [minivan] was that he, Ms. Layton, and their children had been

- 2 -

grocery shopping and Ms. Layton had left her purse inside the [minivan]. [Appellant] was subsequently arrested by Officer McGowan.

When asked who owned the [minivan], Ms. Layton testified that it was not owned by her; rather, it was a loaner [vehicle] given to her from the dealership after she experienced car trouble. At trial Ms. Layton testified that she, [Appellant], and their daughter had gone grocery shopping on the evening in question, although the statement given to the police that night indicated that [Appellant] had not gone shopping with them. Ms. Layton testified that the gun was in her purse, as she had forgotten to take it out, and when they got to the grocery store[,] she did not want it with her. She claimed to have put it under the [front] passenger seat. Ms. Layton testified that she was carrying a loaded gun because a woman[,] who [Appellant] had a relationship with[,] was stalking and harassing her.

[Appellant] took the stand and first admitted that he had []a prior conviction for false identification to law enforcement. He asserted that he had already been in the process of getting out of the minivan when the officers [arrived on] the evening in question, and [he] had been at that location to speak to Curtis. He testified that he did not know that the firearm was in the [minivan] when he gave Officer McGowan consent to search the [vehicle]. Contrary to Officer McGowan's testimony, he claimed that Officer McGowan never asked if there was anything illegal in the vehicle and that [Appellant] never revealed that he knew there was a gun in the [minivan]. Rather, [Appellant's] testimony was that he called his girlfriend on speaker-phone and told her he was with the police. According to [Appellant], Ms. Layton responded by asking why he [was not] answering his phone, told him she left her firearm in the [minivan], and asked where he was. Officer McGowan was re-called as a witness to clarify that [Appellant] made an admission that there was a firearm inside the vehicle, and was specific about its whereabouts. [Officer McGowan] was given this information prior to searching the [minivan].

Trial Court Opinion, 9/30/19, at 1-4 (record citations and footnote omitted).

After a jury found Appellant guilty, on April 11, 2019, of the aforementioned crime, the trial court sentenced Appellant, on June 17, 2019,

to 50 to 100 months' incarceration and ordered him to pay a fine in the amount of $500, as well as costs. Appellant filed a post-sentence motion raising a claim of insufficient evidence and arguing that the verdict was against the weight of the evidence. The trial court denied Appellant's post-sentence motion on June 27, 2019. This appeal followed.[2]

Appellant raises the following issues for our review:

[1.] Did the Commonwealth fail to present evidence sufficient to sustain a verdict of guilty with respect to [the crime of persons not to possess a firearm]?

[2.] Did the trial [court] abuse its discretion [*sic*] when it denied Appellant[']s motion for [a] new trial claiming the verdict of the jury was contrary to the greater weight of the evidence[?]

Appellant's Brief at 6 (extraneous capitalization omitted).

Appellant claims the evidence is insufficient to support his conviction of persons not to possess a firearm because the Commonwealth failed to prove Appellant possessed the firearm, an element of the crime. *Id.* at 13. In addressing a sufficiency claim, our standard and scope of review are well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence

_____

[2] Both Appellant and the trial court complied with Pa.R.A.P. 1925. In a January 2, 2020 *per curiam* order, this Court dismissed the instant appeal for Appellant's failure to file a brief. On January 7, 2020, this Court, in a *per curiam* order, vacated its dismissal order and reinstated Appellant's appeal. Appellant subsequently filed his brief on February 18, 2020, and the Commonwealth filed its brief on April 2, 2020.

to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004). To preserve a sufficiency claim, the Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Pursuant to 18 Pa.C.S.A. § 6105, in order to sustain a conviction for persons not to possess a firearm, "the Commonwealth must prove that Appellant possessed a firearm and that he was convicted of an enumerated offense [under Section 6105(b) or (c)] that prohibits him from possessing, using, controlling, or transferring a firearm." *Commonwealth v. Miklos*, 159 A.3d 962, 967 (Pa. Super. 2017) (brackets and original quotation marks omitted), *appeal denied*, 170 A.3d 1042 (Pa. 2017); *see also* 18 Pa.C.S.A. § 6105.

"Illegal possession of a firearm may be established by constructive possession." ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We []defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we []held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

In his Rule 1925(b) statement, which incorporated the allegations set forth in his post-sentence motion, Appellant contends the Commonwealth failed to prove that the firearm was either in his possession or under his control at the time of the incident. Appellant's Rule 1925(b) Statement, 9/17/19, at ¶3; ***see also*** Appellant's Post-Sentence Motion, 6/25/19, at ¶5; Appellant's Brief at 13-15. Appellant argues that his mere presence in the vehicle where the police found the firearm does not amount to constructive possession of the firearm because the Commonwealth failed to establish that Appellant had the intent to exercise control over the firearm. Appellant's Brief at 15.

In finding record support that Appellant constructively possessed the firearm, the trial court stated,

[t]he gun was found on the floor under the second-row bench seat, and was within [Appellant's] reach from the driver's seat. All [Appellant] had to do was reach back to retrieve the firearm. Therefore, it was shown beyond a reasonable doubt that [Appellant] had the power to control the gun. His intent to control the firearm was borne out by circumstantial evidence. There was testimony to suggest that [Appellant] was acting in a deliberate way to keep the police officer away from the [minivan], even going as far as to say that he was acting in an undercover capacity and that the officers were interfering with [his undercover operation]. [Appellant's] statement to [the] police that the gun was in a purse in the backseat was utterly false. Ms. Layton testified that she placed the firearm under the front passenger seat, and it was actually found under the backseat, and not under the front seat. The jury clearly believed that it was someone other than Ms. Layton who moved the firearm, namely, [Appellant]. The jury was free to believe all, part, or none of the evidence. Viewing the totality of the circumstances and circumstantial evidence, there is more than ample support for a determination that [Appellant] had the power to control the [firearm], and the intent to exercise that control.

Trial Court Opinion, 9/30/19, at 5-6.

With regard to the element of possession, the record demonstrates the police officers discovered the firearm underneath the middle of the second-row bench seat in a vehicle of which Appellant was the driver and sole occupant at the time the firearm was discovered. The location of the firearm was very close to the driver's seat that Appellant occupied just prior to exiting the vehicle as the police approached. Officer McGowan testified that Appellant, upon exiting the vehicle, attempted to dissuade the police officers' involvement in the situation by stating that Appellant was currently involved in an undercover operation. Appellant did not offer any evidence, other than his own self-serving testimony, to discredit Officer McGowan's testimony of

the events. Officer McGowan stated the police had no knowledge of any active undercover operations ongoing in the area at the time of the encounter with Appellant. Appellant's girlfriend testified that, earlier in the day, she placed the firearm, of which she was the registered owner, under the front passenger seat of the vehicle before going into the grocery store. Appellant's girlfriend further stated that upon arriving home from the grocery store, Appellant unloaded the groceries and later left in the vehicle without her knowledge. It was after Appellant left in the vehicle that his girlfriend realized her gun was not in her purse, which was on top of the refrigerator in her kitchen.

Based upon the totality of the circumstances, the jury could infer, beyond a reasonable doubt, that Appellant constructively possessed the firearm found underneath the middle of the second-row bench seat. The firearm was located in close proximity to the driver's seat that Appellant occupied just prior to exiting the vehicle. Thus, the firearm was within Appellant's reach and control. In addition, Appellant's girlfriend stated that she placed the firearm under the front passenger seat before entering the grocery store and forgot to remove the gun upon returning home. Appellant had control of the vehicle after returning home from the grocery store and at the time of the incident. The evidence was therefore sufficient to support a finding that Appellant moved the firearm from underneath the front passenger seat, where Appellant's girlfriend placed it, to underneath the middle of the second-row bench seat, where police officers recovered the gun. Therefore, viewing all of the evidence and the inferences drawn from that evidence in the

light most favorable to the Commonwealth, as the verdict winner, there was sufficient evidence for the jury, as fact-finder, to find that Appellant had control over the firearm and the intent to exercise that control. Additionally, Appellant stipulated that in October 2008, he be convicted of a violation of The Controlled Substance, Drug, Device and Cosmetic Act, namely a conviction for manufacture, delivery, or possession with the intent to deliver a controlled substance. N.T., 4/10/19, at 69; **see also** 35 P.S. § 780-113(a)(30). Therefore, Appellant was convicted of an offense that prohibited him from possessing, using, controlling, or transferring a firearm pursuant to 18 Pa.C.S.A. § 6105(c)(2). Thus, Appellant's sufficiency claim is without merit.

Appellant's second issue raises a claim that the verdict was against the weight of the evidence, for which our standard and scope of review is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge []had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Horne**, 89 A.3d 277, 285 (Pa. Super. 2014), *citing*

**Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000). The trial court

abuses its discretion "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Horne*, 89 A.3d at 285-286 (citation omitted). In order for an appellant to prevail on a weight of the evidence claim, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

Here, Appellant argues that the trial court erred in denying his post-sentence motion challenging the weight of the evidence to support his conviction. Appellant's Brief at 16-20. Appellant contends that his testimony and the testimony of his girlfriend support a finding that he had no knowledge of the firearm in the vehicle and, therefore, could not have constructively possessed the firearm for purposes of his conviction. *Id.* at 20. Appellant avers that Officer McGowan falsely testified that Appellant told him the gun was in the vehicle prior to the police officers' search of the vehicle and recovery of the firearm from underneath the middle of the second-row bench seat. *Id.* at 19.

Appellant's argument invites this Court to do nothing more than reassess the witnesses' credibility and reweigh the evidence in an attempt to convince us to reach a result different than the one reached by the jury, as fact-finder. We decline Appellant's invitation. *Commonwealth v. Clay*, 64

A.3d 1049, 1056 (Pa. 2013) (holding role of appellate court when addressing weight claim is to determine if trial court exceeded its limit of judicial discretion or invaded province of jury).  Based upon the record before us, we discern no abuse of discretion on the part of the trial court in denying Appellant's request for a new trial based on his claim that the verdict was against the weight of the evidence.  Therefore, Appellant's claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/22/2020