J-A12043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLYE WOODS | : | |
| | : | |
| Appellant | : | No. 701 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 20, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000937-2023

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED NOVEMBER 10, 2025**

Kellye Woods ("Woods") appeals from the judgment of sentence imposed following her convictions for carrying a firearm without a license and carrying a firearm on the streets of Philadelphia.[1]  Because Woods's challenges to the weight and sufficiency of the evidence for her convictions merit no relief, we affirm.

The trial court provided the following factual and procedural history:

1.     [I]n September [] 2022, at approximately 5:45 p.m., Police Officer[] David Ramos (hereinafter [",]Officer Ramos["]) was on duty as a Temple University Police Officer when his tour of duty took him to the 1600 block of West Diamond Street in the City and County of Philadelphia.

2.     At that time, Officer Ramos exited a marked patrol vehicle and saw that a "very hostile altercation" was taking place in the area.

_____

[1] *See* 18 Pa.C.S.A. §§ 6106, 6108.

3.     As Officer Ramos approached the crowd, he saw a female who was later identified as [Woods's] daughter l[]ying on the ground pointing a firearm at the crowd.

4.     Officer Ramos pulled out his service weapon and pointed it while yelling "to put the weapon down."

5.     At that time, the female turned and gave the weapon to [Woods] who put the weapon in her waistband.

6.     When [Woods] put the weapon in her waistband[,] Officer Ramos asked her to put the weapon down and [Woods] stated: "No, I have a permit."

7.     Officer Ramos continued to follow [Woods] as she was walking away from [him] while he was commanding her to drop the weapon.

8.     Officer Ramos followed [Woods] for a block as he kept demanding that she give him the gun.

9.     At some point during the encounter with [Woods], Officer Ramos told [her] to either give him the gun "or she was [going] to have to get tased," and then [Woods] handed the gun to [O]fficer Ramos.

10.    Officer Ramos's backup arrived, and then the two police officers placed [Woods] and her daughter into custody.

11.    At that point, Office[r] Ramos went to his patrol car and utilizing equipment in his patrol car, Officer Ramos determined that [Woods's] license to carry a firearm had been revoked [the prior month following an incident in which she shot herself].

Trial Ct. Op., 5/22/24, at 2-4 (citations to the record omitted).

Woods was arrested and ultimately charged with the above-mentioned offenses. She waived a jury trial and proceeded to a non-jury trial on October 20, 2023, after which the trial court found her guilty. Woods filed a post-sentence motion on October 26, 2023, which was denied by operation of law

on March 1, 2024. Woods timely appealed on March 2, 2024.[2] Both Woods and the trial court complied with Pa.R.A.P. 1925.

Woods raises the following issues for our review:

A. Was the evidence insufficient to sustain the guilty verdicts for [sections] 6106 and []6108, where there was insufficient evidence [Woods] unlawfully possessed her own firearm with criminal intent, and where she justifiably possessed it under emergent circumstances[,] as her minor child took the firearm without permission, and where pursuant to [Woods's] affirmative duty as a parent and to others, disarmed her child to avoid imminent and greater harm/evil to her minor child and others, and where [Woods] was under the reasonable mistaken belief she had a valid carry [] permit?

B. Were the guilty verdicts against the weight of the evidence for [sections] 6106 and []6108, as the evidence was that [Woods] reasonably believed taking the firearm from her minor child was necessary and justified to avoid imminent and greater harm/evil to her minor child and others, and where she was under the reasonable mistaken belief that she still had a valid carry [] permit, as the evidence proved she was unaware her carry [] permit was revoked, and where she otherwise lacked any criminal intent to unlawfully possess the firearm?

Woods's Br. at 7 (issues reordered).

_____

[2] Pennsylvania Rule of Criminal Procedure 720(B)(3)(a) provides that the trial court shall decide the post-sentence motion within 120 days of the filing, or the motion is deemed denied by operation of law. Woods filed her post-sentence motion on October 26, 2023; and the 120th day fell on February 23, 2024. However, the court did not enter an order denying the motion by operation of law until March 1, 2024. While Woods's appeal is facially untimely, it is apparent there was a breakdown in the court system, *i.e.*, the failure of the clerk of courts to timely issue an order denying the post-sentence motion. In these circumstances, we consider the appeal timely. **See Commonwealth v. Braykovich**, 664 A.2d 133, 138 (Pa. Super. 1995).

In her first issue, Woods challenges the sufficiency of the evidence for her convictions. To review the sufficiency of the evidence, this Court assesses:

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Burton***, 234 A.3d 824, 829 (Pa. Super. 2020) (internal citations omitted).

It is unlawful for a person to carry a firearm "concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter," and a conviction for carrying a firearm without a license is a third-degree felony, subject to exceptions not at issue herein. 18 Pa.C.S.A. § 6106(a)(1). It is also unlawful to carry a firearm on public streets or property in a city of the first class, which includes

- 4 -

Philadelphia, without a license. **See** 18 Pa.C.S.A. § 6108.[3] The *mens rea* for each element of these offenses, because it is not expressly stated in the statutes, is "intentionally, knowingly or recklessly." ***Commonwealth v. Scott***, 176 A.3d 283, 291 (Pa. Super. 2017).

The Crimes Code also provides that otherwise criminal conduct may be justified in circumstances including the following: "Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if: (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" 18 Pa.C.S.A. § 503(a)(1). Additionally, unlawful possession of a firearm "is a continuing offense, and thus, [a defendant's] possession of the firearm may have been justified for part, but not all of the time [she] exhibited control over the weapon." ***Commonwealth v. Miklos***, 159 A.3d 962, 968 (Pa. Super. 2017). To establish justification, a defendant must show she took "only the ***minimum*** action necessary to avoid the harm." ***Commonwealth v. Clouser***, 998 A.2d 656, 660 (Pa. Super. 2010) (emphasis in original).

Woods does not contest the sufficiency of the evidence that, as a factual matter, she carried a firearm without a license in Philadelphia. Rather, Woods's sufficiency challenge hinges on two arguments: (1) that she was

---

[3] We note this Court has invalidated section 6108 as applied to open carry fact patterns, which is inapplicable here where Woods was convicted for concealed carrying the firearm, and she does not challenge that she concealed the weapon. **Cf**. ***Commonwealth v. Sumpter***, 340 A.3d 977 (Pa. Super. 2025).

justified in possessing the firearm regardless of the status of her license; and

(2) she lacked the requisite *mens* rea to commit the offenses, namely, she

alleges, the evidence was insufficient to show she knowingly possessed the

firearm without a license. **See** Woods's Br. 29-37. Specifically, Woods argues

she was justified in taking the firearm from her daughter to de-escalate a

combustible situation involving her daughter and an aggressive crowd around

her, and that she, Woods, had a mistaken belief that she still possessed a

concealed carry license.

The trial court considered Woods's sufficiency challenge and concluded

it is meritless. The court explained:

> . . . Notably, the evidence showed that [Woods] was standing next to her daughter when Officer Ramos was commanding [her] daughter to "drop the gun." Instead of dropping the firearm, [Woods's] daughter handed the firearm to [Woods].
>
> Upon examining [Woods's] behavior from the moment [she] came into possession of the firearm until the moment [she] gave the firearm to Officer Ramos[,] this . . . [c]ourt finds [Woods's] contention of ["]justification["] fails . . . because instead of just recovering the firearm from her daughter as [Woods] stated she believed was her parental duty, [she] chose to place the firearm in her waistband and walk away from Officer Ramos for approximately one block despite Officer Ramos'[s] repeated commands for her to give him the gun. Thus, it was not until Officer Ramos threatened to tase [Woods] that [she] gave him the firearm.

Trial Ct. Op., 5/22/24, at 7-8 (footnote omitted). Additionally, the trial court

noted Woods's assertion of mistake, **see id**. at 5, but rejected it based

apparently on the totality of the evidence rebutting her asserted lack of

knowledge that her license had been revoked. *See id*. at 8 (noting that the fact-finder may infer guilt from the totality of the circumstances).

Based on our review and taking the evidence in the light most favorable to the verdict-winner, *i.e.*, the Commonwealth, as our standard of review requires, we conclude the evidence was sufficient to sustain Woods's convictions, namely, that it rebutted her assertions of justification and mistake. We note that the uncontested evidence is that after Woods's daughter handed Woods the firearm, and Woods successfully participated in the de-escalation of the situation involving her daughter, Officer Ramos instructed Woods to drop the weapon; and, instead, Woods, with the firearm tucked into her waistband, declined to drop the weapon and walked away from Officer Ramos despite his repeated directives for her to drop the weapon. *See* N.T., 10/20/23, at 6-8. The foregoing shows that Woods, rather than taking the minimum actions necessary to prevent possible harm arising from her daughter's altercation, proceeded to take further actions in addition to merely taking possession of the gun, and, in fact, she only relinquished the firearm after being told she would be tased if she did not comply. *See id*. at 19. Woods's additional actions in disobeying Officer Ramos did not contribute to the de-escalation of the conflict involving her daughter, and accordingly, her justification defense fails. *See* 18 Pa.C.S.A. § 503(a)(1); *Miklos*, 159 A.3d at 968 (possession is a continuing offense and justification may extend to only

part of the time a defendant possessed an item); **Clouser**, 998 A.2d at 660 (justification requires the minimum action to avoid harm).

Additionally, the uncontested evidence of record shows that Woods did not have a license on this date, **see** N.T., 10/20/23, at 25 (stipulation that Woods did not possess a license), and that Woods possessed the firearm at least in a reckless manner regarding her non-licensure. The record shows that a month and a half before this incident, Woods shot herself with her own handgun, was transported to Temple Hospital, after which police executed search warrants for her car and home, and had her license revoked. **See id**. at 25-26.[4] Additionally, the Commonwealth's evidence showed that on August 11, 2022, officers seized her firearms license, **see** N.T., 10/20/23, at Ex. C-5, and Woods was unable to provide a physical license to Officer Ramos or at trial. As stated above, the *mens rea* of "recklessly" satisfies the firearms statutes at issue, and this Court has defined "recklessly" to be the conscious disregard of a substantial and unjustifiable risk that the material element exists. **See** 18 Pa.C.S.A. § 302(b)(3). The circumstances here, wherein Woods's license was physically taken after she shot herself, in combination with the fact that Woods was unable to provide the original license either to

_____

[4] Generally, the county sheriff is the issuing authority who is also authorized to revoke licenses; however, in Philadelphia, the chief of police is the applicable authority. **See** 18 Pa.C.S.A. § 6109(b), (g), (i); **see also** 37 Pa. Code. § 33.115(a) (providing that the issuing authority, *i.e.*, the county sheriff, or where applicable the chief of police, shall issue a license conforming to a prescribed form).

Officer Ramos or at trial, shows that Woods consciously disregarded a substantial and unjustifiable risk that she was unlicensed, regardless of whether she received written notification of the formal revocation. Accordingly, the Commonwealth's evidence, in the light most favorable to it as the verdict-winner, was sufficient to prove Woods's *mens rea* of recklessness. Thus, Woods's challenge to the sufficiency of the evidence fails.

In her second issue, Woods challenges the weight of the evidence for her convictions. This Court's standard of review is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.]
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (internal citation and indentation omitted). "Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact-finder's] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to

- 9 -

prevail." ***Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. 2011) (internal citation and quotations omitted).

It is the exclusive province of the fact-finder to weigh inconsistencies in a witness's testimony and to make credibility determinations. ***See Commonwealth v. Izurieta***, 171 A.3d 803, 809 (Pa. Super. 2017). Indeed, this Court has explained that a new trial should not be granted because of a mere conflict in the testimony, or because a judge on the same facts would have arrived at a different conclusion. ***See Juray***, 275 A.3d at 1047. Rather,

> [a] trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Id***.

Woods argues the trial court abused its discretion in denying her weight claim for essentially the same reasons as her sufficiency challenge, namely, that she presented a justification defense and also her testimony showed that she lacked the requisite *mens rea*. ***See*** Woods's Br. at 17-27.

The trial court considered Woods's claim and denied relief. We note, initially, that Woods properly raised her weight claim—including justification and her mistaken belief of licensure—in a post-sentence motion. ***See*** Post[-]Sentence Mot., 10/26/23, at ¶ 3. The trial court later issued an order denying the post-sentence motion by operation of law. ***See*** Order, 3/1/24.

- 10 -

When "a claim is denied by operation of law, the effect of the denial operates in the same manner as if the court had denied the motion itself." ***Commonwealth v. Upshur***, 764 A.2d 69, 73 (Pa. Super. 2000). Accordingly, we proceed to determine whether the trial court abused its discretion in denying the motion.

We address first Woods's *mens rea* argument, which we may dispatch quickly. Woods argues the applicable *mens rea* is "knowingly," and argues the weight of the evidence was against her convictions based on this standard. However, as noted above, the applicable *mens rea* is recklessly, for which Woods makes no argument, and, accordingly, she is due no relief. ***See Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023) ("It is not the obligation of an appellate court to formulate an appellant's arguments for [her]") (internal citation, quotations, and brackets omitted).[5] Next, Woods

_____

[5] In any event, we note the trial court, sitting as fact-finder, did not find that Woods did not know about her license revocation, but rather expressed skepticism about that fact:

> [P]erhaps she thought she had a permit. Mannheim Street, [where the notice was sent,] she is still associated with Mannheim Street even though she doesn't physically live there. The certified mail goes to the address. . . . She did admit she was associated with Mannheim Street. Whether she opened the mail is not a defense. . . . She refuses to turn [the permit] over [to Officer Ramos]. I think that flips it from the defense. She's refusing to hand it to him.

N.T., 10/20/23, at 60-61. The trial court did not credit Woods's testimony that she did not know about her license revocation, and pointed to specific
*(Footnote Continued Next Page)*

- 11 -

argues again for her justification defense: she maintains she was obliged to either let her daughter "likely shoot someone or harm herself" or alternatively "procure the firearm." Woods's Br. at 27. However, Woods's arguments are not germane to her additional actions, namely, that, after procuring the firearm, she tucked the gun into her waistband and walked away from Officer Ramos despite his requests for her to stop and drop the gun.[6] Given that the justification to de-escalate her daughter's conflict, if it existed, did not extend to her attempts to walk away from Officer Ramos with the gun, we conclude Woods has failed to show the trial court abused its discretion in denying her weight claim premised on justification. *See Juray*, 275 A.3d 1047 (a successful weight claim requires a showing of an abuse of discretion by the trial court); *Miklos*, 159 A.3d at 968 (possession is a continuing offense and justification may extend to only part of the time a defendant possessed an item). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

facts rebutting her assertion. We may not reweigh the fact-finder's credibility determination. *See Izurieta*, 171 A.3d at 809.

[6] The trial court considered Woods's justification defense and concluded that had she handed the gun over after obtaining it from her daughter, she would have been justified; but "[s]he refuses [to hand over the firearm]. He's following her a whole block. There are other people around. . . . He's following a person with a gun . . . continually commanding. He testified he followed her for a block. I think that's where you lose it, [d]efense." N.T., 10/20/25, at 64.

- 12 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/10/2025</u>