J-S43011-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DERRICK GALLAWAY :
:
Appellant : No. 200 WDA 2020

Appeal from the Judgment of Sentence Entered November 25, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001824-2018

BEFORE: SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY SHOGAN, J.: FILED JANUARY 14, 2021

Appellant, Derrick Gallaway, appeals from the judgment of sentence entered on November 25, 2019, following his convictions by a jury for first degree murder, robbery, theft by unlawful taking, and tampering with physical evidence.[1] After careful review, we affirm in part and reverse in part.

The facts, as gleaned from the certified record, are as follows:[2] On the morning of May 27, 2016, Denhad Taiedi ("the Victim"), the owner of the Jefferson Hills Motel (the "motel") in Clairton, Pennsylvania, was found dead in the motel office. N.T., 8/29/19, at 298. The cause of death was a gunshot

_____

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 3921(b), and 4910(1), respectively.

[2] Although the trial judge ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied, the trial judge resigned before he prepared a Pa.R.A.P. 1925(a) opinion. However, because we are able to properly review Appellant's claims on the basis of the present record, we need not remand for a trial court opinion.

wound to the head. N.T., 8/28/19, at 89. The office was in disarray, a cash box and bank bag were mostly emptied, and the security camera had been ripped out of the wall. N.T., 8/29/18, at 300; N.T., 8/28/19, at 123–124; 107. A fired shell casing was also recovered from the scene. Id. at 129.

Responding officers noted a fresh trail of blood droplets from the office to the motel's parking lot. N.T., 8/28/19, at 95; N.T., 8/29/29, at 311. The Allegheny County Medical Examiner's Office tested the blood droplets and determined that they matched Appellant's DNA. N.T., 8/30/19, at 547–548. Blood stains on a tray from the cash box, the office door, and inside the bank bag also corresponded to Appellant's DNA. Id. at 546–549. After the DNA testing linked Appellant to the crime, he was arrested on November 13, 2017, in California for the Victim's murder. Id. at 601.

At trial, Julan Seidel ("Seidel"), a motel guest, testified that she spoke with Appellant the night before the shooting and observed him with another male, identified as Shawn Urcini ("Urcini"). Seidel overheard part of their conversation, that "they were about to get money that night" by committing a robbery. N.T., 8/28/19, at 214.

Nicole Stercula ("Stercula") and Linda Holliday ("Holliday"), the motel's office clerks, testified that Appellant had been a resident at the motel in late 2015, and was evicted after an altercation with the Victim. N.T., 8/28/19, at 256–257; N.T., 8/30/19, at 514. Stercula noticed Appellant spending time

with Danielle Walker ("Walker"), Urcini's girlfriend. N.T., 8/28/19, at 258.[3] Both employees testified the Victim and Walker were involved in some kind of relationship, and at times, Walker had access to the motel's master key. N.T., 8/28/19, at 263–264; N.T., 8/30/19, at 508–509. In June of 2015, police officers escorted Walker off of the motel premises when the Victim complained that she was acting erratically. N.T., 8/29/19, at 335. She returned to the motel one week before the shooting and asked the Victim for money. N.T., 8/28/19, at 267.

Charles Wright ("Wright") testified that he met Appellant through Walker in 2015 when Walker brought Appellant to his house to purchase methamphetamine. N.T., 8/29/19, at 422, 424. Wright explained that Walker "was always scheming and plotting" and had solicited Wright to commit a robbery in the past. Id. at 431-432; 439.

Appellant testified in his defense that on the night of the murder, he was with a prostitute in the parking lot of the motel when he heard gunshots, followed by two men running from the lobby. N.T., 8/30/19, at 630-634. Appellant stated that he ducked down when the shots rang out and cut his finger on the jagged edge of a crack pipe the prostitute was using. Id. at 634. He went into the lobby to investigate and saw the Victim's body. Appellant did not contact the police because he did not want to be linked to the crime. Id. at 635-636; 671.

_____

[3] Urcini and Walker died from drug overdoses in 2017.

Appellant also denied being close with Walker and testified he did not know Wright nor was he ever present at Wright's house. N.T., 8/30/19, at 638-640. Furthermore, although Appellant acknowledged that he saw Urcini on the night of the shooting, he stated that he only asked him for a cigarette and there was no discussion of a robbery. Id. at 641.

Appellant was convicted by a jury of the aforementioned offenses. On November 25, 2019, Appellant was sentenced to life in prison for first-degree murder followed by ten to twenty years' of incarceration on the robbery. The theft conviction merged into the robbery, and no further penalty was given on the tampering conviction. This appeal followed.

Appellant raises two issues for appellate review:

I. Did the trial court abuse its discretion by permitting the Commonwealth to play a video of [Appellant] in a jail uniform during questioning by police such that the danger of the video's prejudicial effect on the jury greatly outweighed its probative value?

II. Where there was no testimony as to what happened to the firearm used in the shooting, did the Commonwealth fail to present sufficient evidence that [Appellant] intended to impair the availability of the firearm in a subsequent proceeding or investigation to prove Tampering with Evidence under 18 Pa.C.S. § 4910(1)?

Appellant's Brief at 6.

Appellant first claims that the trial court abused its discretion when it permitted the Commonwealth to play a video of a police interview with Appellant while he was attired in prison garb. During trial, the Commonwealth related that it intended to play the video of Appellant's interview with the

investigating officer, Detective Patrick Miller and Detective Kevin McCue, after he was extradited from California to Pennsylvania. The Commonwealth explained that it had edited the video to exclude a prejudicial statement uttered by Appellant and an animated and heated exchange between Appellant and the interviewing detectives. N.T., 8/29/29, at 273–275. Defense counsel objected to admission of the video and argued it was prejudicial because Appellant was wearing prison "reds." Id. at 276. The trial court responded, "This is not the only case where a defendant, a suspect is interviewed in their jail reds," and overruled the objection. Id. Although the trial court offered to give the jury a cautionary instruction, defense counsel declined the offer. Id. at 351.

Our standard of review is well established. The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. Commonwealth v. Antidormi, 84 A.3d 736, 749 (Pa. Super. 2014). In determining whether evidence should be admitted,

> the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

Commonwealth v. Weakley, 972 A.2d 1182, 1188 (Pa. Super. 2009) (quoting Commonwealth v. Reid, 811 A.2d 530, 550 (Pa. 2002)).

Antidormi, 84 A3d at 749. "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Id. at 749–750 (citing Commonwealth v. Carroll, 936 A.2d 1148, 1152–1153 (Pa. Super. 2007) (quotation omitted). "An abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant." Id. at 750 (quoting Commonwealth v. Viera, 659 A.2d 1024, 1028 (Pa. Super. 1995)).

On appeal, Appellant contends that the trial court should have excluded the video under Pennsylvania Rule of Evidence 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice . . . ." Pa.R.E. 403. Appellant maintains that his appearance in the video wearing prison clothes prejudiced his presumption of innocence in the eyes of the jury. Appellant's Brief at 16. Appellant further avers that he "was supposed to have entered that courtroom with the presumption of innocence, one that seemingly was accepted by the trial court since it permitted [Appellant] to wear a suit throughout trial." Id. at 21.

The threshold inquiry with admission of evidence is whether the evidence is relevant. Antidormi, 84 A.3d at 750 (quoting Commonwealth v. Stokes, 78 A.3d 644, 654 (Pa. Super. 2013)).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." Commonwealth v. Spiewak, 617 A.2d 696, 699 (Pa. 1992). In addition, evidence is only admissible where the probative value of the evidence outweighs its prejudicial impact. Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155, 160 (1978).

Stokes, 78 A.3d at 654; see also Pa.R.E. 403 ("Otherwise relevant evidence may be excluded if its probative value is outweighed by its potential for prejudice."). "The probative value of the evidence might be outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, pointlessness of presentation, or unnecessary presentation of cumulative evidence." Commonwealth v. Page, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citations omitted). The comment to Pa.R.E. 403 instructs that: "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, cmt.

This Court has previously held that "allowing a defendant to appear before a jury panel in prison garb constitutes error warranting a new trial."

Commonwealth v. Kellum, 489 A.2d 758, 762 (Pa. Super. 1985);[4] see also Commonwealth v. Keeler, 264 A.2d 407 (Pa. Super. 1970) (judgment of sentence vacated when the defendant had been brought to jury selection wearing his prison uniform). In Keeler, this Court observed:

> A defendant in prison garb gives the appearance of one whom the state regards as deserving to be so attired. It brands him as convicted in the state's eyes. It insinuates that the defendant has been arrested not only on the charge being tried but also on other charges for which he is being incarcerated.

Keeler, 264 A.2d at 409.

Similarly, in Estelle v. Williams, 425 U.S. 501, 504–505 (1976), when an incarcerated defendant learned that he was to go on trial, he asked a corrections officer for civilian clothes. This request was denied. As a result, the defendant appeared at trial in clothes that were distinctly marked as prison-issued. 425 U.S. at 502. In deciding that the defendant's right to equal protection was violated, the United States Supreme Court observed that "Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." Id. at 504 (footnote omitted). Moreover, the prohibition of forcing a defendant to attend his trial in identifiable prison or jail clothing is based primarily upon the impact

_____

[4] Despite the Kellum Court's conclusion that allowing a defendant to appear before a jury panel in prison garb generally warrants a new trial, it ultimately concluded that the error was harmless in light of the overwhelming evidence against the defendant. Kellum, 489 A.2d at 763.

that the "constant reminder of the accused's condition implicit in such distinctive, identifiable attire" might have upon the jury. Id. at 504–505.

These cases do not afford Appellant relief. First, regarding Appellant's assertion that he was entitled to enter the courtroom with the presumption of innocence, Appellant admits that he was in fact wearing civilian clothes throughout the duration of the trial. Appellant's Brief at 21. The subject video was played on the third day of trial at the conclusion of the Commonwealth's case-in-chief. At this point, the jury already received considerable testamentary and physical evidence connecting Appellant to the crimes. This is not the same as the situations in Keeler and Kellum wherein the defendant was introduced to the jury pool wearing prison attire. Nor, as in Estelle, was Appellant's brief appearance in prison attire in a video a constant reminder to the jury of his condition of incarceration. The duration of the video was less than twenty minutes. N.T., 8/30/19, at 611; Commonwealth Exhibit 137.

Furthermore, the video's probative value outweighed any prejudicial effect. "[W]hen a person has committed a crime, and knows that he is wanted for it, any attempt by that person to . . . give false statements . . . may be admissible as evidence of consciousness of guilt, and may, along with other evidence in the case, form a basis from which guilt may be inferred." Commonwealth v. Pestinikas, 617 A.2d 1339, 1347–1348 (Pa. Super. 1992); see also Commonwealth v. Flamer, 53 A.3d 82, 88 (Pa. Super. 2012) (the highly probative nature of defendant's consciousness of guilt

clearly outweighs any undue prejudice arising from its admission); Commonwealth v. Chapman, 136 A.3d 126, 128 (Pa. 2016) (defendant's lies to police during their investigation evidenced his consciousness of his guilt) (footnote omitted).

During the video-taped interview, Appellant denied that he had family in Clairton, that he stayed at the Jefferson Motel in 2015, that he was at the Jefferson Motel in 2016, and that he rented a car in 2016. Commonwealth's Exhibit 138 (Transcript of video interview), 12/13/17, at 9–13. All of these statements were contradicted at trial. Appellant's denial of being at the Jefferson Hills Motel in 2016 was directly refuted by scientific evidence. Blood samples matching Appellant's DNA were found on the bank bag, the cash box tray, the inside door sill plate in the motel lobby, and in two separate blood stains on the pavement of the motel parking lot. N.T., 8/30/19, at 527–548.

In addition, testimony from the hotel desk clerks established that contrary to Appellant's account, he had stayed in the motel in 2015 for an extended time. N.T., 8/28/19, at 256; N.T., 8/29/19, at 507. Furthermore, an employee of the Hertz rental car company demonstrated that Appellant's statement that he never rented a car in Pittsburgh was false. In fact, documentary evidence showed that Appellant rented a car from Hertz at the Pittsburgh Airport on April 16, 2016, and the car was not returned to the company until June 6, 2016. N.T., 8/29/19, at 517-519; Commonwealth's Exhibit 135. Finally, Appellant testified that during the timeframe of the

May 27, 2016 crimes, he was staying with his aunt, a family member. N.T., 8/30/19, at 675–676. Thus, the video recording of Appellant's contrary statements to the police was extremely probative of Appellant's consciousness of guilt.

Moreover, Appellant's abbreviated assertion that his rights were violated because the jury did not hear evidence that Appellant was incarcerated for the subject crimes at the time of the interview, as opposed to some unrelated crime, is not a sustainable argument. Appellant's Brief at 20. Detective Miller testified that during his investigation of the subject crimes, he was notified that some evidence collected at the scene matched Appellant's DNA. N.T., 8/30/19, at 600. On August 26, 2016, an arrest warrant was issued for Appellant, but attempts to locate him in Pittsburgh were unsuccessful. Id. The arrest warrant was turned over to the United States Marshall, and Appellant was eventually apprehended in California on November 13, 2017. Id. at 601. Detective Miller noted that Appellant was extradited from California to Pennsylvania on either December 13 or 14, 2017, then correctly identified the date of the interview as December 13, 2017. Id. at 602; Stipulation to Supplement the Certified Record, 7/6/20, at 2. From this testimony, it was clearly reasonable for the jury to infer that Appellant was incarcerated for the Jefferson Motel crimes occurring on May 27, 2016, at the time of the interview. "There is no rule in Pennsylvania which prohibits

reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." Commonwealth v. Johnson, 838 A.2d 663, 680 (Pa. 2003).

Therefore, because 1) Appellant's appearance in the video wearing prison grab was played on the last day of trial after the jury heard overwhelming evidence of Appellant's guilt; 2) Appellant's lies to the detectives during the video interview demonstrated a consciousness of guilt; and, 3) the jury could reasonably infer that Appellant was incarcerated at the time of the video in connection with the crimes committed on May 26, 2016; the probative value of the video far outweighed any prejudice to Appellant. Accordingly, we discern no abuse of discretion in the admission of the video.

Appellant next claims that the evidence was insufficient to support his conviction for tampering with evidence. Appellant's Brief at 23.

> A challenge the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

Commonwealth v. Rivera, 238 A.3d 482, 495 (Pa. Super. 2020).

Tampering with evidence is defined in the Crimes Code as follows:

> A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

> (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation[.]

18 Pa.C.S. § 4910(1). To prove the offense of tampering with evidence, the Commonwealth must prove three elements:

> (1) the defendant knew that an official proceeding or investigation was pending (or about to be instituted); (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation.

Commonwealth v. Toomer, 159 A.3d 956, 961 (Pa. Super. 2017) (quoting Commonwealth v. Jones, 904 A.2d 24, 26 (Pa. Super. 2006)). Appellant urges that his conviction for tampering must be reversed because the Commonwealth failed to produce any evidence of an intent to impair the availability of the firearm at trial. Appellant's Brief at 15. While Appellant concedes that the Commonwealth's case indicated that a firearm was used to shoot and kill the victim, he contends that there was no evidence as to what happened to the firearm afterwards. Appellant thus submits that without evidence that he was instrumental in the firearm being unavailable at trial, the Commonwealth could not prove an intent to tamper with the firearm, particularly because the firearm was never recovered. Id. We are constrained to agree.

In attempting to rebut Appellant's sufficiency challenge, the Commonwealth offers that the "evidence and reasonable inferences therefrom showed that [Appellant] was present in the motel lobby when the robbery and murder of [the victim] took place." Commonwealth's Brief at 22. Even viewed

favorably, however, the Commonwealth's evidence does not demonstrate any connection between the firearm and Appellant and/or that Appellant altered, destroyed, concealed, or removed the firearm with the intent to impair its availability.

The Commonwealth cites Commonwealth v. Toomer, 159 A.3d at 962 in support of upholding Appellant's conviction. In Toomer, an appellant discharged his wife's gun, striking the victim. While his wife drove the victim to the hospital, the appellant went to his apartment, removed his wife's guns from her purse, and placed them on the kitchen counter. Toomer, 159 A.3d 958–959. When investigating officers learned of the shooting, they searched the appellant's apartment and found the guns. During his interview, the appellant told the officers that his wife discharged the firearm. Toomer eventually gave police an accurate account of the events and he was charged with, inter alia, tampering with evidence. Id.

On appeal, the appellant argued that as to the intent element, he was neither aware of a police investigation nor intended to impair it by concealing evidence. Toomer, 159 A.3d 962. We disagreed, concluding that based upon the totality of the circumstances, a jury could have reasonably inferred that Toomer knew the police would immediately begin investigating the shooting once the victim arrived at the hospital with a gunshot wound. Id. We also decided that the jury could have reasonably inferred that, aware that a police investigation was forthcoming, the appellant "dispose[d] of the weapons in an

- 14 -

attempt to conceal his involvement in [the victim's] shooting. Such an inference is particularly reasonable in light of [the detective's] testimony that Toomer initially lied and told him that [his wife] had been in possession of the firearm when it discharged. Id.

We find Toomer distinguishable in that it is limited to the evidence of the intent element. In addition, the jury heard direct evidence that the appellant in Toomer engaged in deceitful practices surrounding the firearm. No such evidence of intent exists herein. Moreover, as to whether Appellant removed the firearm from the scene, we note the only information that the Commonwealth presented to the jury was that a firearm caused the victim's death and that the firearm was never recovered. N.T. 8/28/19, at 89; 8/29/19, at 366. These general facts do not suffice to prove the second element of the tampering offense—that Appellant removed the firearm. Such a factual inference is based on conjecture only, and Appellant's conviction of this offense must be reversed. This conclusion is buttressed by the fact that the trial court agreed to give the Commonwealth's requested accomplice instruction because it was "consistent the way the evidence came in in this case." N.T., 8/30/19, at 688.

Reversal of this conviction, however, does not upset Appellant's sentencing scheme, because the trial court did not impose any penalty for this offense. N.T. (Sentencing), 11/25/19, at 27. Accordingly, it is not necessary to remand this case for resentencing. See Commonwealth v. Henderson,

938 A.2d 1063, 1068 (Pa. Super. 2007) ("Because the aggregate sentence remains the same, we need not remand for re-sentencing.").

Judgment of sentence affirmed in part and reversed in part. The convictions for first degree murder, robbery, and theft by unlawful taking are affirmed. The conviction for tampering with physical evidence is reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/14/2021